614 F.2d 108
 UNITED STATES of America, Plaintiff-Appellant,
v.
32.40 ACRES OF LAND, MORE OR LESS, SITUATED IN the COUNTY OF
LEELANAU, STATE OF MICHIGAN, and Crystal River
Associates, a Michigan Partnership, et
al., and Unknown Owners,
Defendants-Appellees.
 No. 79-1190.
 United States Court of Appeals,
Sixth Circuit.
 Argued Oct. 8, 1979.
Decided Jan. 22, 1980.
 
 James S. Brady, U. S. Atty., Grand Rapids, Mich., James W. Moorman, Asst. Atty. Gen., Jacques B. Gelin, Dirk D. Snel, Philip M. Zeidner, Attys., Dept. of Justice, Washington, D. C., for plaintiff-appellant.
 Dale W. Rhoades, Rhoades, McKee & Boer, Grand Rapids, Mich., for defendants-appellees.
 Before EDWARDS, Chief Judge, MERRITT, Circuit Judge and PHILLIPS, Senior Circuit Judge.
 EDWARDS, Chief Judge.
 
 
 1
 This is an appeal from the denial of a motion filed by the United States under Rule 60(b) of the Federal Rules of Civil Procedure,[1] to set aside a stipulated condemnation judgment in the sum of $1,197,500 for 32.40 acres of vacant land. The United States claims and has presented proof that the stipulation was entered without authority by the Assistant U.S. Attorney who represented the United States in the condemnation case. Appellees claim that the stipulation was as to a matter of fact and that the judgment must be treated as final. We must decide, first, whether there was an unauthorized settlement, and second, if there was an unauthorized settlement, whether the judgment should be enforced or set aside.
 
 
 2
 This litigation arises out of the decision made by Congress and the President in 1970 to acquire a large sand dune and lakeshore area in Leelanau County, Michigan, for a national park overlooking Lake Michigan. The park was named Sleeping Bear Dunes National Lakeshore.
 
 
 3
 The area had, of course, been discovered and enjoyed by private owners of lakeshore and dune property before the decision of the government was made. Many of the properties desired by the Park Service, including the 32.40 acres involved here, were the subject of federal condemnation proceedings.
 
 
 4
 Some strange things happened, however, on the way to the courthouse in this instance.
 
 
 5
 A complaint in condemnation of the 32.40 acres of land here involved was filed February 28, 1978. The land was owned by defendant Crystal River Associates (henceforth CRA) as a part of a development begun in the early 1970's and named "The Homestead." Appellees' brief contains this description of the Homestead:
 
 
 6
 The Homestead is a residential and recreational development bordering Lake Michigan. Located on the Homestead property, a parcel containing some 225 acres, are numerous condominium units and single family dwellings; recreational facilities including tennis courts, platform tennis courts and a swimming pool; and other facilities such as roadways, sewage systems, water supply, parking areas, administration and operation buildings, ski trails, sports areas, and restaurants.
 
 
 7
 The record makes clear that none of the homes or condominiums had been built on the 32.40 acres here at issue. But it also makes clear that CRA had plans for development of this acreage, that the entrance to the Homestead and the access road were located on the subject land, and that CRA claimed still other improvements had been made there or would be damaged by its acquisition.
 
 
 8
 On March 2, 1978, the District Court ruled that title to the property was to be vested in the United States and the right to just compensation was to be vested in the landowners. Subsequently, $46,944.88 of the $50,000 deposited by the United States was awarded to the landowners with $3,055.12 reserved for 1977 real estate taxes. The trial of just compensation was set for July 17, 1978, before a Commission appointed by the District Judge.
 
 
 9
 The District Judge, in his opinion denying the United States' motion to set aside the award, recited additional relevant facts in this matter as follows:The Government's independent appraiser was Mr. Paul Stoppert and approximately one week before the trial he reported to the Government that his appraisal would be in the range of $500,000 to $1,000,000; this information was passed on to the Park Service. On the day before trial, defendants were informed that Mr. Stoppert was the Government's appraiser, and they were told that he had assessed the value of the property to be $1,197,500.
 
 
 10
 Defendants claim that their appraiser had arrived at a value of approximately $1,500,000; however, they decided to accept the determination of Mr. Stoppert. Before the trial, Dale Rhoads, attorney for the landowners, and Robert Greene, Assistant United States Attorney, agreed that they would stipulate that the value of the property was $1,197,500. This stipulation was made on the record before the Commission, and Mr. Greene agreed to it. A copy of Mr. Stoppert's appraisal was then entered into evidence, and the Commission stated that a judgment could be prepared in the amount of $1,197,500. On July 26, 1978, I entered a judgment in this amount and stated in my findings:
 
 
 11
 6. That on the 17th day of July, the Commission did find that the just compensation to be awarded for the acquisition of Tract No. 40-148 is One Million One Hundred Ninety-Seven Thousand Five Hundred and no/100 Dollars ($1,197,500).
 
 
 12
 Nearly two months after entry of judgment, the United States filed a motion to set aside judgment under Rule 60(b)(1), (2), (4) and (6).
 
 
 13
 In support of its motion, the United States filed a brief reciting as follows:
 
 
 14
 After the entry of the Judgment, the appraisal section of the Department of Justice and the Park Service reviewed Mr. Stoppert's appraisal report and in their opinion found it inadequate to the value Mr. Stoppert placed on the property. Further, the Department of Justice considers the Judgment an unauthorized settlement since the agreement was not approved by the proper representative of the Department of Justice prior to its submission to the Commission.
 
 
 15
 During the week of September 11, 1978, Norman Lower MAI, Chief of the Appraisal Section for the Department of Justice, William M. White, Acting Chief Appraiser for the National Park Service and Leonard P. Engler MAI SRPA, Chief Appraiser of the Omaha Region of the National Park Service, together with Paul Stoppert, examined the Homestead Property. After review of this property, comparables in the area, and other data, they concluded that the property had a value between $462,000 to $665,000.
 
 
 16
 Accompanying the government's motion and brief was an affidavit signed by Robert C. Greene, the Assistant U.S. Attorney who had agreed to the stipulation of the $1,197,500 value at the Commission hearing, which affidavit said in part:
 
 
 17
 In reference to the above case, I did not submit the Notice of trial in writing to the Department of Justice; secure the Attorney General's authorization to exclude any property for the declaration of taking; submit the appraisal report to the Department of Justice for their review prior to the hearing before the Commission; submit any offers of compromise to the Department of Justice to be submitted to the Attorney General as required by 28 C.F.R. 50.160-172.
 
 
 18
 In response to the government's assertions concerning reappraisals, appellees point out that the government has not supported its allegations with any testimony or sworn affidavits. They flatly charge misrepresentation concerning Stoppert's participation in any reappraisal. They also have filed an affidavit dated May 11, 1979, signed by Stoppert, denying any reappraisal by him and asserting that his original opinion of damages (I. e. value of portion taken) remains unchanged. In short, it was the appellees' position before the District Judge (and is before this court) that there is no showing of prejudice to the United States which would support the government's motion to set aside judgment.
 
 
 19
 Finally, CRA's owner, Mr. Kuras, also claimed and claims:
 
 
 20
 Subsequent to the entry of this judgment and in reliance upon said judgment, defendant-appellee has been pursuing other investments and improvements of the Homestead development. Defendant-appellee has in fact made commitments in reliance upon the agreement of plaintiff-appellant and the judgment of the court that the funds would be paid within thirty (30) days of the date of judgment. To date, however, the funds have not been paid.
 
 
 21
 The respective legal arguments of the parties do not squarely meet. Appellant United States contends that what occurred before the Condemnation Commission and the District Court was a "settlement" within the meaning of Land and National Resources Division Directive No. 7-76 (December 8, 1976); 41 Fed.Reg. 53660; 28 C.F.R., Appendix to Subpart Y, Section II-C-3(a), which provides:
 
 
 22
 3. Compromise of Condemnation Cases. (a) Subject to the limitations imposed in Paragraph D of this section, United States Attorneys are hereby authorized, without the prior approval of the Land and Natural Resources Division, to accept or reject offers in compromise of claims against the United States for just compensation in condemnation proceedings in any case in which
 
 
 23
 (i) The gross amount of the proposed settlement does not exceed $40,000; and
 
 
 24
 (ii) The settlement is approved in writing (the written approval to be retained in the file of the United States Attorney concerned) by the authorized field representative of the acquiring agency if the amount of the settlement exceeds the amount deposited with the declaration of taking as to the particular tract of land involved; and
 
 
 25
 (iii) The amount of the settlement is compatible with the sound appraisal, or appraisals, upon which the United States would rely as evidence in the event of trial, due regard being had for probable minimum trial costs and risks; and
 
 
 26
 (iv) The case does not involve the revestment of any land or improvements or any interest, or interests, in land under the Act of October 21, 1942, 56 Stat. 797 (40 U.S.C. 258f). 3(b). When a United States Attorney has settled a condemnation proceeding under the authority conferred upon him by the foregoing subparagraph, he shall promptly secure the entry of judgment and distribution of the award, and shall take all other steps necessary to dispose of the matter completely. The United States Attorney concerned shall also immediately forward to the Department a report, in the form of a letter or memorandum, bearing his signature or showing his personal approval, stating the action taken and containing an adequate statement of the reasons therefor. In routine cases, a form, containing the minimum elements of the required report, may be used in lieu of a letter or memorandum. In any case, special care shall be taken to see that the report contains a statement as to what the valuation testimony of the United States would have been if the case had been tried.[2]
 
 
 27
 The United States claims that an unauthorized settlement of a condemnation proceeding does not bind the United States and must be set aside.
 
 
 28
 Appellees, on the other hand, assert and the District Court found that what was involved here was a stipulation of fact as to the value of the land and hence was not covered by the regulation just quoted. They also claim that the United States' motion to set aside judgment should be denied as not "in keeping with sound public policy."
 
 
 29
 The first question to be answered as we see this case is: Was this a settlement?
 
 
 30
 Crucial to the answer to this question is the stipulation actually entered into before the Condemnation Commission. As to this, the record shows the following:
 
 
 31
 MR. RHOADES: Your Honor, in the cause of the United States of America versus 32.40 acres of land, more or less, situated in the County of Leelanau, State of Michigan and Crystal River Association, a Michigan Partnership, et al., and Unknown Owners; file number G 78-106 CA(7), counsel for the Plaintiff, United States of America and myself, upon behalf of the Defendants in this cause, have reached an understanding relative to the resolution of the dispute herein, and we have a stipulation to be placed upon the record.
 
 
 32
 May the record show that Mr. Robert A. Kuras is present in the courtroom at this time.
 
 
 33
 The stipulation that I'm about to read has been reviewed with counsel for the United States Government. He has concurred with it.
 
 
 34
 I'll consort now to read the same into the record. And Mr. Greene, thereafter I will request him to signify his acceptance to the agreement thereto.
 
 
 35
 First of all, the United States of America filed a Declaration of Taking in the within cause, taking as of March 2, 1978, approximately one-third of defendants' remaining development property, as described in the pleadings herein.
 
 
 36
 This Taking is, and has been greatly objected to by the owners. Notwithstanding this objection, the indicated property has been taken and acquired by the United States of America.
 
 
 37
 The Taking is of a portion of a large tract owned by the Crystal River Association, a Michigan corporation, and The Homestead Land Company Ltd., a Michigan limited partnership, both under the control of Robert A. Kuras.
 
 
 38
 On the larger tract from which the Taking has occurred, there has been developed one of the outstanding resorts and condominium developments of this region.
 
 
 39
 The Taking is approximately one-third of defendants' remaining development property.
 
 
 40
 As of the current date, 129 units have been completed on subject property, with some 54 units under construction, all of which have been sold. The units under construction were sold prior to the completion of construction, which is indicative of the market acceptance of this development.
 
 
 41
 In accordance with the Court's instructions, the fair market value of the property taken and the diminution in value of the property not taken is to be reflected.
 
 
 42
 United States of America has caused the property of defendant owners to be appraised in both the so-called before and after state as of the date of taking, and have estimated the fair market value before giving effect to the Taking of $5,768,368. The U.S. Government has had the fair market value of the remainder parcel, after giving effect to the Taking, and estimate its value as of the date of taking to be at $4,570,868.
 
 
 43
 Accordingly it is the position of the United States of America that just compensation to the owner to the sum of $1,197,500. Although it is the opinion of defendant owners, based on appraisals prepared for these proceedings, the said damages exceed these estimates, in an effort to be cooperative with the United States of America, the defendants have consented to accept this estimate of just compensation for full settlement of all estimated compensation to which they are entitled subject to the following:
 
 
 44
 One, it is understood that no portion of the agreed compensation is attributable to damages suffered by owners for the taking of the fee interest and leaving in owners an easement only for access to M-22.
 
 
 45
 Two, that no portion of said damages or compensation is attributable to wells, sprinkling systems, signs and other improvements located at or about the entrance of the Homestead facility at N-22.
 
 
 46
 And no compensation or severance damages, Item Three, is attributed to ski trails located on the property taken or of ski trails affected by the Taking.
 
 
 47
 It is understood and agreed that the above items indicated, One, Two and Three, and other use agreements will be negotiated between the parties. To this end, conferences and discussions (will take place between the) Superintendent of Sleeping Bear Dunes National Lakeshore and owners relative to resolution of these items, and it is anticipated that the negotiations will result in appropriate amendments to the Judgment of Taking to reflect the agreement of the parties.
 
 
 48
 If the parties are unable to resolve these items to their mutual satisfaction, then estimates of said damages shall be determined by the parties and submitted to this Court for adjudication.
 
 
 49
 The resolution of these understandings relative to the road access, the entrance improvements, the ski trail usage are not conditions of the settlement herein stipulated which is absolute, but are covenants and understandings of the parties of issues of potential damages to be resolved by future agreement or, in the absence of future agreement, by this Court.
 
 
 50
 It is understood that just compensation and interest due thereon shall be paid within approximately thirty days from this date.
 
 
 51
 Mr. Greene, were you able to hear the stipulations read onto the record?
 
 
 52
 MR. GREENE: Yes. The Government understood the stipulations as read on the record. The Government will agree to the stipulations as read on the record.
 
 
 53
 We have no doubt that this record showing entry of this stipulation recorded a "settlement" within the meaning of the regulation previously quoted. Not only does the stipulation record the fact that the landowner reduced its estimate of value to arrive at the agreed price, it also indicates in detail that the agreement calls for prompt payment by the United States of $1,197,500, with substantial issues recognized as pertinent to the taking left for negotiation or condemnation at additional cost. In short, what was recorded was a partial settlement which was totally unauthorized either by the National Park Service or by the written consent of the Assistant U.S. Attorney's superiors in the Department of Justice as required by government regulation.
 
 
 54
 The second question is: Should the settlement nonetheless be enforced against the United States where under official regulations it was unauthorized?
 
 
 55
 If we dealt here with land acquisition negotiations between private parties, the estoppel arguments advanced by defendants-appellees, absent a showing of fraud or over-reaching, would almost certainly prevail. See Holker v. Parker, 11 U.S. 436 (7 Cranch), 3 L.Ed. 396 (1813); Senate Realty Corporation v. Commissioner of Internal Revenue, 511 F.2d 929 (2nd Cir. 1975).
 
 
 56
 What we deal with in this case, however, is clearly a compromise and settlement of a federal case which settlement was unauthorized under federal law. The rule which governs this case is one which is applicable directly to the U.S. Government. In United States v. Beebe, 180 U.S. 343, 21 S.Ct. 371, 45 L.Ed. 563 (1901), the Supreme Court said:
 
 
 57
 (T)he facts just stated and which are admitted by the demurrers are enough in our opinion to call for the setting aside of those judgments. It is enough, without alleging fraud in their entry, that they simply carry out and represent a compromise made by the district attorney which he had no power to enter into, and which rendered the judgments so far unauthorized as to permit a suit to set them aside.
 
 
 58
 We think there can be no serious question that a district attorney of the United States has no power to agree upon a compromise of a claim in suit except under circumstances not present in this case. There is no statute of the United States, and no regulation has been called to our attention, giving a district attorney any such power, but, on the contrary, it is provided in paragraph 7 of the regulations established by the Solicitor of the Treasury, and approved by the Attorney General, pursuant to § 377 of the Revised Statutes of the United States, that no district attorney shall agree to take a judgment or decree for a less amount than is claimed by the United States, without express instructions from the Solicitor of the Treasury, unless circumstances exist which do not obtain in this case. The power to compromise a suit in which the United States is a party does not exist with the district attorney any more than a power to compromise a private suit between individuals rests with the attorney of either party, and that such an attorney has no power to compromise a claim in suit has been frequently decided.
 
 
 59
 Id. at 351, 21 S.Ct. at 374.
 
 
 60
 So, if the judgment be in fact entered upon a compromise made by the attorney who had no authority to make it, the judgment may be attacked and set aside in an equitable action upon proof of the necessary facts. Although the judgment is not void for want of jurisdiction in the court, it will yet be set aside upon affirmative proof that the attorney had no right to consent to its entry.
 
 
 61
 Id. at 352, 21 S.Ct. at 375.
 
 
 62
 See also Federal Crop Insurance v. Merrill, 332 U.S. 380, 68 S.Ct. 1, 92 L.Ed. 10 (1947); Utah Power & Light v. United States, 243 U.S. 389, 37 S.Ct. 387, 61 L.Ed. 791 (1917).
 
 
 63
 This rule has been spelled out in more recent times by this court. Writing for a unanimous panel, Chief Judge Phillips said in 1978:
 
 
 64
 Even if it be assumed that petitioner introduced clear and convincing evidence of an oral compromise agreement that would have been binding between two private litigants, its contentions, if proved, would fall short of establishing a compromise agreement binding upon an agency of the United States Government. Generally, the Government is not bound by agreements of its agents acting beyond the scope of their authority. See Federal Crop Insurance Corp. v. Merrill, 332 U.S. 380, 383, 68 S.Ct. 1, 92 L.Ed. 10 (1947); United States v. Stewart, 311 U.S. 60, 70, 61 S.Ct. 102, 85 L.Ed. 40 (1940); Utah v. United States, 284 U.S. 534, 545, 52 S.Ct. 232, 76 L.Ed. 469 (1932); United States v. Beebe, 180 U.S. 343, 21 S.Ct. 371, 45 L.Ed. 563 (1901); Taylor v. Perini, 503 F.2d 899, 901-02 (6th Cir.), Vacated on other grounds, 421 U.S. 982, 95 S.Ct. 1985, 44 L.Ed.2d 474 (1974); Cleveland Trust Co. v. United States, 421 F.2d 475, 482 (6th Cir.), Cert. denied, 400 U.S. 819, 91 S.Ct. 35, 27 L.Ed.2d 46 (1970); United States v. Rossi, 342 F.2d 505 (9th Cir. 1965); United States v. Willoughby, 250 F.2d 524, 530 (9th Cir. 1957); Wallace v. United States, 142 F.2d 240, 242-43 (2d Cir. 1944).
 
 
 65
 The Supreme Court said in Rock Island, Arkansas & Louisiana Railroad Co. v. United States, 254 U.S. 141, 143, 41 S.Ct. 55, 56, 65 L.Ed. 188 (1920), that "men must turn square corners when they deal with the Government." We are cited to no statute, regulation or other authority that would authorize an attorney for the Secretary of Labor to enter into a binding compromise by means of a telephone conversation, without formalizing the compromise by a written agreement.
 
 
 66
 Empire-Detroit Steel Division v. OSHRC, 579 F.2d 378, 382-3 (6th Cir. 1978).
 
 
 67
 Although for all that is shown on the record the net result of this current action brought by the United States may be to increase the cost to the United States of the subject land, we follow the established rule of setting aside unauthorized settlements. In the long run, we entertain no doubt that the rule is designed to and does protect the public treasury from possibilities of fraud and corruption.
 
 
 68
 The District Court should have granted the motion to vacate judgment under Rule 60(b)(6). The judgment is vacated and the case is remanded for further proceedings consistent with this opinion.
 
 
 
 [1]
 Rule 60 of the Federal Rules of Civil Procedure states:
 (a) Clerical Mistakes. Clerical mistakes in judgments, orders or other parts of the record and errors therein arising from oversight or omission may be corrected by the court at any time of its own initiative or on the motion of any party and after such notice, if any, as the court orders. During the pendency of an appeal, such mistakes may be so corrected before the appeal is docketed in the appellate court, and thereafter while the appeal is pending may be so corrected with leave of the appellate court.
 (b) Mistakes; Inadvertence; Excusable Neglect; Newly Discovered Evidence; Fraud, Etc. On motion and upon such terms as are just, the court may relieve a party or his legal representative from a final judgment, order, or proceeding for the following reasons: (1) mistake, inadvertence, surprise, or excusable neglect; (2) newly discovered evidence which by due diligence could not have been discovered in time to move for a new trial under Rule 59(b); (3) fraud (whether heretofore denominated intrinsic or extrinsic), misrepresentation, or other misconduct of an adverse party; (4) the judgment is void; (5) the judgment has been satisfied, released, or discharged, or a prior judgment upon which it is based has been reversed or otherwise vacated, or it is no longer equitable that the judgment should have prospective application; or (6) any other reason justifying relief from the operation of the judgment. The motion shall be made within a reasonable time, and for reasons (1), (2), and (3) not more than one year after the judgment, order, or proceeding was entered or taken. A motion under this subdivision (b) does not affect the finality of a judgment or suspend its operation. This rule does not limit the power of a court to entertain an independent action to relieve a party from a judgment, order, or proceeding, or to grant relief to a defendant not actually personally notified as provided in Title 28, U.S.C., § 1655, or to set aside a judgment for fraud upon the court. Writs of coram nobis, coram vobis, audita querela, and bills of review and bills in the nature of a bill of review, are abolished, and the procedure for obtaining any relief from a judgment shall be by motion as prescribed in these rules or by an independent action.
 
 
 [2]
 This section was later amended to allow United States Attorneys to compromise condemnation cases in which the gross amount of the settlement does not exceed $100,000. 43 Fed.Reg. 36068 (August 15, 1978)