*RECOMMENDED FOR FULL-TEXT PUBLICATION*
Pursuant to Sixth Circuit Rule 206

File Name: 07a0276p.06

# UNITED STATES COURT OF APPEALS

## FOR THE SIXTH CIRCUIT

THE CITY OF WARREN,

> *Plaintiff-Appellant,*

v.

THE CITY OF DETROIT,

> *Defendant-Appellee.*

No. 06-1380

Appeal from the United States District Court
for the Eastern District of Michigan at Detroit.
No. 02-74288—John Feikens, District Judge.

Argued: March 5, 2007

Decided and Filed: July 23, 2007

Before: BOGGS, Chief Judge; DAUGHTREY and GIBBONS, Circuit Judges.

———————

## COUNSEL

**ARGUED:** George G. Constance, CITY OF WARREN LEGAL DEPARTMENT, Warren, Michigan, for Appellant. Robert J. Franzinger, DYKEMA GOSSETT, Detroit, Michigan, for Appellee. **ON BRIEF:** George G. Constance, William H. Hackel III, CITY OF WARREN LEGAL DEPARTMENT, Warren, Michigan, for Appellant. Robert J. Franzinger, DYKEMA GOSSETT, Detroit, Michigan, Jill M. Wheaton, DYKEMA GOSSETT, Ann Arbor, Michigan, for Appellee.

———————

## OPINION

———————

JULIA SMITH GIBBONS, Circuit Judge. Plaintiff-appellant the City of Warren, Michigan, filed a complaint in state court, alleging breach of contract and violation of Michigan law by the Detroit Water and Sewerage Department ("DWSD"), a department of defendant-appellee the City of Detroit, Michigan, relating to rates charged for DWSD's provision of water to residents of Warren. After Detroit removed the action to federal court, the district court denied Warren's motion to remand the case to state court. The case was later stayed pending efforts by a third party to resolve rate disputes. Nearly two years later, the district court lifted the stay and dismissed the case. Warren appeals the district court's denial of its motion to remand and the district court's lifting of the stay. For the following reasons, we reverse the denial of Warren's motion to remand, which moots the issue of lifting the stay.

1

I.

Warren filed a complaint in the Circuit Court for the County of Macomb, Michigan, challenging the rates charged by Detroit for the provision of water. Warren alleged that the water purchase contract between Warren and Detroit requires a reasonable water rate and that Mich. Comp. Laws § 123.141(2) requires Detroit to establish water rates based on the actual cost of service as determined under the utility basis of rate-making. Warren alleged that Detroit breached the contract and violated the statute by including, among other costs, costs associated with DWSD's sewer system, which Warren does not use. In addition to damages for breach of contract, Warren sought an injunction to prevent Detroit from charging unreasonable rates and an order requiring Detroit to make an accounting of all factors included in establishing the water rates.

Detroit removed the case to the United States District Court for the Eastern District of Michigan on the grounds that Warren's action arose under the judgments and orders entered pursuant to the federal Clean Water Act and the federal Clean Air Act in *United States v. City of Detroit*, No. 77-71100 (E.D. Mich.), and that removal was necessary to protect the integrity of the orders in that action. *United States v. City of Detroit* ("the EPA case") was a suit brought by the Environmental Protection Agency in 1977 to compel DWSD to comply with obligations under the Federal Water Pollution Control Act and related to the discharge of pollutants from the Detroit Wastewater Treatment Plant ("WWTP") into the Detroit River. In September 1977, the case was resolved by a consent judgment that established a compliance schedule for achieving secondary treatment of pollution sources. After finding that DWSD was not in compliance with the consent judgment, the district court appointed a Special Administrator to manage the operation of the WWTP. An amended consent judgment was entered in 1980, and after certain requirements were met, a National Pollution Discharge Elimination System ("NPDES") permit was issued for the WWTP in 1983. After DWSD reported certain violations of its NPDES permit in 1997, the district court again appointed a Special Administrator of the WWTP and entered a second amended consent judgment. The authority of the Special Administrator was not limited to the wastewater operations of the DWSD but included collection of receivables, payment of debt, contractor payment procedures, finances, capital improvements, contract procurement, setting the rates for customers, and the allocation of costs between water and sewer services.

In the present case, the district court denied Warren's motion to remand the case to state court. The district court concluded that the case was properly removed pursuant to 28 U.S.C. § 1441(b) as arising under federal law because Warren sought relief that had an adverse effect upon or was inconsistent with the federal consent decree. The district court also suggested that removal might be appropriate pursuant to 28 U.S.C. § 1442(a)(3) because the case challenged the actions of a federal officer, the Special Administrator, but concluded that Detroit's failure to raise this ground in its petition for removal precluded jurisdiction on this ground.[1]

In late 2003, the district court proposed, and Warren and Detroit agreed, that the case be stayed while the Southeast Michigan Consortium for Water Quality ("Consortium") carried out its independent attempts to achieve a global resolution of issues relating to DWSD's rate structures. The district court entered a stay "until such time as the rate committee of the Southeast Michigan Consortium for Water Quality completes its efforts to voluntarily resolve the disputes surrounding the [DWSD] rate structures." At the time of the stay, Detroit's Motion to Exclude Plaintiff's Experts Pursuant to Fed. R. Civ. P. 37(c) was pending, having been fully briefed and oral argument having been held. Nearly two years later, the district court received a letter from the Consortium indicating that it "had completed its efforts to specifically address those matters raised in the Warren case." The district court lifted the stay and granted Detroit's pending motion. Finding that Warren could

---

[1] On appeal, Detroit does not argue that the district court had jurisdiction under 28 U.S.C. § 1442(a)(3).

not prove its case without expert testimony, the district court dismissed the case. Warren filed a timely notice of appeal.

## II.

Warren appeals the denial of its motion to remand this case to state court. Because the district court dismissed the case, thereby rendering a final judgment, this court has jurisdiction to consider the denial of the motion to remand. *Fakouri v. Pizza Hut of Am., Inc.*, 824 F.2d 470, 472 (6th Cir. 1987); *see also* 15A Charles Alan Wright, Arthur R. Miller & Edward H. Cooper, *Federal Practice and Procedure* § 3914.11 (2d ed. 1992). This court reviews denials of motions to remand to state court *de novo*, *Her Majesty the Queen in Right of the Province of Ontario v. City of Detroit*, 874 F.2d 332, 338 (6th Cir. 1989), and examines "whether the case was properly removed to federal court in the first place," *Rogers v. Wal-Mart Stores, Inc.*, 230 F.3d 868, 871-72 (6th Cir. 2000) (citing *Ahearn v. Charter Twp. of Bloomfield*, 100 F.3d 451, 453 (6th Cir. 1996)).

At the outset, it is important to note that Warren is not a party to any of the consent judgments, is not bound by the judgments, and is entitled to its "own day in court" to challenge actions taken under the judgments. *Martin v. Wilks*, 490 U.S. 755, 761-62 (1989), *superseded by statute on other grounds*, 42 U.S.C. § 2000e-2(n). The question for this court is where such disputes may be litigated, specifically, whether the district court had jurisdiction pursuant to 28 U.S.C. § 1441(b) because the instant action arises under federal law due to the EPA case.

Section 1441(b) provides that "[a]ny civil action of which the district courts have original jurisdiction founded on a claim or right arising under the Constitution, treaties or laws of the United States shall be removable without regard to the citizenship or residence of the parties." 28 U.S.C. § 1441(b). "Only state-court actions that originally could have been filed in federal court may be removed to federal court by the defendant."[2] *Caterpillar, Inc. v. Williams*, 482 U.S. 386, 392 (1987). "The presence or absence of federal-question jurisdiction is governed by the 'well-pleaded complaint rule,' which provides that federal jurisdiction exists only when a federal question is presented on the face of the plaintiff's properly pleaded complaint." *Id.*; *Franchise Tax Bd. v. Constr. Laborers Vacation Trust*, 463 U.S. 1, 9-10 (1983). Consequently, "a case may *not* be removed to federal court on the basis of a federal defense." *Caterpillar*, 482 U.S. at 393. The Supreme Court has identified three situations in which a case could "arise under" federal law: (1) the plaintiff's cause of action is created by federal law, *Franchise Tax Bd.*, 463 U.S. at 8-9; (2) "some substantial, disputed question of federal law is a necessary element . . . of the well-pleaded state claim[]," *id.* at 13; or (3) the "claim is 'really' one of federal law," *id.*

Warren's complaint does not assert a claim created by federal law. Its claims are based upon contract law and a Michigan statute that requires rates be "based on the actual cost of service as determined under the utility basis of rate-making." Mich. Comp. Laws § 123.141(2).

A substantial, disputed question of federal law is not a necessary element of either of Warren's state-law claims. Warren's contract claim alleges that Detroit has included certain costs in the water rates that are not reasonable, as required by the contract. Warren's statutory claim alleges that Detroit has included costs in the water rates that are not included in the actual cost of service as determined under the utility basis of rate-making, as required by Michigan statute. Neither of these claims raises a question of federal law because the consent judgments entered in the EPA case lack the power to supersede Warren's contractual rights or the Michigan statute. *See*

---

[2] For this reason, Detroit's reliance on *Oakland County v. City of Berkley*, 742 F.2d 289 (6th Cir. 1984), is in error. In *Oakland County* the court determined that *ancillary* jurisdiction existed because the case involved parties who were already parties to the EPA case. *Id.* at 296-97. Ancillary jurisdiction is insufficient to support removal. *See* 28 U.S.C. § 1441(b) (requiring original jurisdiction).

*People Who Care v. Rockford Bd. of Educ. Sch. Dist. No. 205*, 961 F.2d 1335, 1337 (7th Cir. 1992). Although a consent judgment is enforceable by the court, the source of the court's authority to require the parties to act is the parties' acquiescence, not rules of law. *Local No. 93, Int'l Ass'n of Firefighters v. City of Cleveland*, 478 U.S. 501, 522 (1986). Therefore, "parties who choose to resolve litigation through settlement may not dispose of the claims of a third party, and *a fortiori* may not impose duties or obligations on a third party, without that party's agreement." *Id.* at 529; *see also Martin*, 490 U.S. at 761-62. As Warren was not a party to the consent judgments, its contractual rights remain intact. Because a consent judgment's force comes from agreement rather than positive law, the judgment depends on the parties' authority to give assent. *See United States v. Beebe*, 180 U.S. 343, 351-55 (1901); *see also United States v. 32.40 Acres of Land, More or Less, Situated in Leelanau County, State of Mich.*, 614 F.2d 108, 113-14 (6th Cir. 1980). To the extent that Mich. Comp. Laws §123.141(2) restricts Detroit's authority to set water rates, Detroit could not consent to an inconsistent judgment. Therefore, the consent judgments have no impact on whether the disputed costs are reasonably included in the water rates under the contract or are included in the actual cost of service as determined under the utility basis of rate-making under the Michigan statute, and Warren's claims do not raise a question of federal law.

Finally, Warren's claim is not "really" one of federal law. While a plaintiff is generally free to choose whether to rely on state or federal law, "it is an independent corollary of the well-pleaded complaint rule that a plaintiff may not defeat removal by omitting to plead necessary federal questions in a complaint." *Franchise Tax Bd.*, 463 U.S. at 22; *Her Majesty the Queen*, 874 F.2d at 339. "If a court concludes that a plaintiff has 'artfully pleaded' claims in this fashion, it may uphold removal even though no federal question appears on the face of the plaintiff's complaint." *Rivet v. Regions Bank of La.*, 522 U.S. 470, 475 (1998). This court has recognized that an expansive application of this doctrine would effectively abrogate the well-pleaded complaint rule. *Her Majesty the Queen*, 874 F.2d at 340. Therefore, "[t]he artful pleading doctrine allows removal where federal law completely preempts a plaintiff's state-law claim," *Rivet*, 522 U.S. at 475, and "[w]here federal and state claims are not identical, the artful pleading doctrine has been held not to apply," *Her Majesty the Queen*, 874 F.2d at 340. As there is no allegation that Warren's claims are identical to federal claims, or are completely preempted by federal law, the artful-pleading doctrine does not apply. Therefore, Warren's claims do not arise under federal law.

Rather than engage in the reasoning mandated by *Caterpillar* and *Franchise Tax Board*, Detroit and the district court rely primarily on two decisions of this court, *Striff v. Mason*, 849 F.2d 240 (6th Cir. 1988), and *Sable v. General Motors Corp.*, 90 F.3d 171 (6th Cir. 1996). Each contains language that could be construed to support removal jurisdiction. In *Striff*, the court found that the plaintiff's "claim was based on the [system of promotion] that derived from the settlement of a federal action and that the relief he sought had a direct and adverse impact upon the federal court decree." *Striff*, 849 F.3d at 244. Relying on the artful-pleading doctrine as stated in *Federated Dep't Stores v. Moitie*, the court concluded that the plaintiff's claims "'had a sufficient federal character to support removal.'"[3] *Id.* at 244-45 (quoting *Federated Department Stores v. Moitie*, 452 U.S. 394, 397 n.2 (1981)). In *Sable*, the court, relying exclusively on *Striff*, concluded that "[s]ince plaintiff seeks relief that conflicts with the consent decree, plaintiff's claim arises under federal law." *Sable*, 90 F.3d at 174.

Relying on these cases, Detroit argues that Warren's claim "'arises under' federal law because it seeks a remedy that is inconsistent with a federal consent decree" because the allocation of costs between water and sewage impacts the ability of DWSD to comply with the consent judgments. This argument represents the expansive application of the artful-pleading rule warned

---

[3] The holding of *Striff* on the merits, that third parties are not permitted to "collaterally attack" consent decrees, was expressly overruled in *Martin*, 490 U.S. 762-63.

of in *Her Majesty the Queen*, 874 F.2d at 340. Applying Detroit's argument, a slip-and-fall case would be removable to federal court because a damage award would affect DWSD's finances and consequently its ability to comply with the consent judgment, a result that would abrogate the well-pleaded complaint rule set forth in *Caterpillar* and *Franchise Tax Board*. For this reason, one sister circuit has suggested that "to the extent that *Striff* suggests that a purported state law claim arises under federal law if the claim would adversely impact a federal consent decree, we believe that the case is inconsistent with Supreme Court precedent." *Collector of the County of Winnebago, Ill. v. O'Brien*, 96 F.3d 890, 897 n.9 (7th Cir. 1996); *see also XL Sports, Ltd. v. Lawler*, 49 F. App'x 13, 19 n.4 (6th Cir. 2002) (noting that "*Striff* is obviously in some tension" with the rule that the only exception to the well-pleaded complaint rule is the doctrine of complete preemption).

Any question as to the continued vitality of the reasoning in *Striff* and *Sable* was resolved by the Supreme Court in *Rivet v. Regions Bank of Louisiana*, when it "clarif[ied] and confine[d] to its specific context the Court's second footnote in *Federated Department Stores, Inc. v. Moitie*." *Rivet*, 522 U.S. at 472. This is the same footnote that formed the basis for the *Striff* court's reasoning. *See Striff*, 849 F.2d at 245. The Supreme Court clarified that the "artful pleading doctrine allows removal where federal law completely preempts a plaintiff's state law claim," *Rivet*, 522 U.S. at 475, rather than when the claims have a "sufficient federal character," the standard on which the *Striff* court relied. *Striff*, 849 F.2d at 245. Furthermore, the Supreme Court held that the preclusive nature of prior federal court orders could not provide a basis for federal question jurisdiction and that the footnote in *Moitie* did not create an exception to the rule that a defendant cannot remove on the basis of a federal defense. *Rivet*, 522 U.S. at 478. In light of *Rivet*, it is clear that the broad interpretation of the artful-pleading doctrine applied by the courts in *Striff* and *Sable* has been abrogated.

Detroit's reliance on *Bylinski v. City of Allen Park*, 169 F.3d 1001 (6th Cir. 1999), is similarly unpersuasive. The *Bylinski* court cited two bases for finding removal jurisdiction over a suit by plaintiffs who were not parties to the consent judgment. First, the court found that it had continuing enforcement jurisdiction over the consent judgment and that the suit "pose[d] an imminent threat to the integrity of the [orders] because it could adversely affect the financing mechanism in those orders." *Id.* at 1002-03. Second, it relied upon the All Writs Act. *Id.* at 1003. Both of these bases have since been overruled by the Supreme Court in *Syngenta Crop Protection, Inc. v. Henson*, 537 U.S. 28 (2002). Neither ancillary enforcement jurisdiction over the consent judgment nor the All Writs Act can provide a basis for removal jurisdiction. *Id.* at 33-34.

III.

For the foregoing reasons, we reverse the district court's denial of Warren's motion to remand the case to state court, mooting the issue of lifting the stay.