*RECOMMENDED FOR FULL-TEXT PUBLICATION*
Pursuant to Sixth Circuit Rule 206

File Name: 10a0300p.06

# UNITED STATES COURT OF APPEALS

FOR THE SIXTH CIRCUIT
_____

UNITED STATES OF AMERICA,

*Plaintiff,*

BOARD OF COMMISSIONERS OF HAMILTON
COUNTY, OHIO,

*Plaintiff-Appellee,*

CITY OF CINCINNATI, OHIO,

*Intervenor Plaintiff-Appellee,*

*v.*

CITY OF LOVELAND, OHIO,

*Defendant-Appellant.*

No. 10-3116

Appeal from the United States District Court
for the Southern District of Ohio at Cincinnati.
Nos. 02-00107; 09-00029—S. Arthur Spiegel, District Judge.

Argued: August 6, 2010

Decided and Filed: September 15, 2010

Before: GUY and GRIFFIN, Circuit Judges; HOOD, Senior District Judge.[*]

_____

## COUNSEL

**ARGUED:** Stephen P. Samuels, SCHOTTENSTEIN, ZOX & DUNN CO., LPA, Columbus, Ohio, for Appellant. Anthony L. Osterlund, VORYS, SATER, SEYMOUR AND PEASE LLP, Cincinnati, Ohio, Louis L. McMahon, McMAHON DeGULIS LLP, Cleveland, Ohio, for Appellees. **ON BRIEF:** Stephen P. Samuels, Alan G. Starkoff, Kevin L. Murch, SCHOTTENSTEIN, ZOX & DUNN CO., LPA, Columbus, Ohio, R. Guy Taft, Joseph J. Braun, STRAUSS & TROY, Cincinnati, Ohio, for Appellant. Anthony L. Osterlund, Mark A. Norman, VORYS, SATER, SEYMOUR AND PEASE LLP, Cincinnati, Ohio, Louis L. McMahon, McMAHON DeGULIS LLP, Cleveland, Ohio, for Appellees.

_____

[*]The Honorable Joseph M. Hood, Senior United States District Judge for the Eastern District of Kentucky, sitting by designation.

1

---

**OPINION**

---

GRIFFIN, Circuit Judge. Defendant City of Loveland appeals the district court's grant of judgment on the pleadings in favor of plaintiff Hamilton County Board of Commissioners, effectively preventing Loveland from terminating a 1985 sewage treatment agreement. Loveland argues that the district court lacked subject-matter jurisdiction and erred by granting judgment on the pleadings. We disagree and therefore affirm.

I.

The City of Loveland, Ohio, is located in the greater Cincinnati metropolitan area. In 1970, Loveland put into operation its Polk Run Waste Water Treatment Plant and sewer system (the "Polk Run System" or "Polk Run Segment"), which provides services to residents in three counties, including Hamilton County. Loveland operated the Polk Run System from 1970 until 1985. In 1985, the City of Loveland and the Board of County Commissioners of Hamilton County, Ohio (the "Board") entered into an agreement (the "1985 Agreement") by which the Board, through a separate agreement with the Metropolitan Sewer District of Greater Cincinnati ("MSD"), would "maintain, repair and operate" the Polk Run System. However, Loveland continued to own the "existing facilities and improvements" constituting the Polk Run System as of the execution date of the 1985 Agreement. Pursuant to the 1985 Agreement, "[t]he rates to be billed for sewerage service shall be those rates . . . established by the Board, which rates may be modified by said Board from time to time" and "[t]he rates for sewerage service shall be uniform throughout the service area of the [MSD]."

In 2002, the United States, on behalf of the Environmental Protection Agency, sued the Board and the City of Cincinnati for violations of the Federal Clean Water Act. *See United States v. Hamilton County Bd. of Comm'rs*, No. 1:02-cv-00107 (S.D. Ohio) (the "consent decree case"). The State of Ohio joined the federal action as a plaintiff,

alleging violations of counterpart state laws. The parties entered into a partial settlement, which required the elimination of longstanding and substantial sewage discharge from the MSD-operated sewer system. Thereafter, the Sierra Club sued the Board, claiming that the partial settlement did not satisfactorily address the health and environmental problems caused by the sewer system. In June 2004, the Sierra Club lawsuit and the original lawsuit were resolved by two consent decrees approved by the United States District Court for the Southern District of Ohio (collectively, the "consent decree"). The consent decree requires the Board and the City of Cincinnati to address capacity and pollution problems within the MSD-operated sewer system, which includes the Polk Run Segment, by implementing infrastructure improvements through the year 2022.

The entry of the consent decree was the culmination of lengthy and complicated litigation. The notice of the proposed consent decree, which included an invitation for public comment, was published in *The Federal Register*. Thereafter, the district court reviewed all public comments and held a hearing on the proposed settlement. Following the hearing, the district court entered the consent decree after ruling that the settlement was fair, adequate, and in compliance with the Clean Water Act. Loveland neither participated in the hearing nor submitted objections or comments regarding the proposed settlement. However, as a consequence of the consent decree, new obligations were imposed upon the MSD-operated sewer system that have resulted in higher rates for all users, including residents of Loveland, whose sewer system has been operated by the Board pursuant to the 1985 Agreement. Under the terms of the consent decree, the district court "retain[ed] jurisdiction to enforce the terms and conditions and achieve the objectives of this Consent Decree and to resolve disputes arising hereunder as may be necessary or appropriate for the construction, modification, implementation or execution of this Decree."

In October 2008, Loveland sent a notice to the Board indicating its intention to terminate the 1985 Agreement, effective December 31, 2009, and to resume its independent operation of the Polk Run System. Simultaneously, Loveland filed suit in

the Clermont County, Ohio, Court of Common Pleas seeking a declaratory judgment, among other things, and eventually asserting a claim for breach of contract. *City of Loveland, Ohio v. Bd. of Comm'rs of Hamilton County, Ohio*, No. 2008 CVH 02199 (C.P. Clermont County, Ohio) (the "state court" action). Loveland's state court complaint alleged that, between 2003 and 2007, the sewer fees charged by the Board grew dramatically, nearly double the State of Ohio average, and would continue to rise because of the funding necessary to comply with the obligations imposed by the consent decree. Loveland also alleged that the increased rates "disproportionately and unfairly overcharged customers" in Loveland because the cost of improvements required for the Polk Run Segment were substantially less than the cost of improvements needed for the other sewer systems in the MSD.

The Board responded by filing the present action in the United States District Court for the Southern District of Ohio, seeking a declaratory judgment that Loveland could not unilaterally terminate the 1985 Agreement and thereby acquire control over the MSD Polk Run Segment. Loveland moved to dismiss the Board's complaint for lack of subject-matter jurisdiction, arguing that it did not raise a federal question and involved only a contract dispute arising under Ohio law. Loveland argued that "any issues related to the reasonableness of the termination of the 1985 Agreement will be addressed by the State Court action," and the federal suit constituted improper "forum shopping." The district court denied the motion to dismiss, ruling that it possessed subject-matter jurisdiction under 28 U.S.C. § 1331, holding that "Loveland's current efforts to modify its relationship with MSD is directly related to its concerns about the implementation of the Consent Decrees" and that the Board "properly selected this forum to seek declaratory judgment . . . ."

Thereafter, the state and federal suits proceeded on parallel tracks. The Board moved to dismiss the state suit, or alternatively, to stay the state action pending the outcome of the federal case. In September 2009, the Ohio Court of Common Pleas granted the Board's motion to dismiss. The state court ruled that Loveland failed to state

a claim either for a declaratory judgment or for breach of the 1985 Agreement. It also commented on the Board's alternative request for a stay, stating:

> While the Court is not making a finding on the motion to stay since it is now moot, the Court would note that the issues involved in this case are exactly the same as those involved in the federal case. The federal court has clearly accepted jurisdiction of Hamilton County's declaratory judgment action since it directly affects the Consent Decrees in the previous case. That declaratory judgment action asks the federal court to resolve the same issue that Loveland is asking this Court to resolve, i.e., whether Loveland can terminate the 1985 agreement and regain control over the Polk Run System. Since both courts are being asked to resolve the same issue, the Court believes that judicial economy and the risk of inconsistent results mandate that only one court determine that issue. The Court further believes that the federal court is in a better position to make that determination since any decision that this Court would make would directly affect the Consent Decrees, over which the federal court has retained jurisdiction. Therefore, since federal consent decrees are at issue, it would make sense to have that court also resolve any issues that have a direct impact on the implementation of those consent decrees.
>
> * * *
>
> Therefore, while not determining the motion to stay, the Court strongly feels that the federal court is currently in a better position to determine those issues that have a direct impact on the Consent Decrees. Had this Court not dismissed the case, it would not have considered the remaining state claims, if any, until the resolution of the current federal action.

Loveland appealed the order of dismissal to the Ohio Court of Appeals, where the appeal remains pending.

In the present case, the district court granted the Board's motion for judgment on the pleadings on January 14, 2010. The court ruled that "Loveland's desire to cancel the 1985 agreement amounts to a collateral attack on the Consent Decree[], to which it never objected in 2004 when it had the opportunity to do so." The district court also noted "without question that Loveland's desire to terminate the 1985 agreement is rooted in the desire to insulate its ratepayers from rate increases due to remediation costs that under the Consent Decree[] will be borne across the MSD system." However, it held that the doctrines of laches and equitable estoppel prevented Loveland's collateral attack

on the consent decree because Loveland had constructive notice of the consent decree in 2004 but failed to object or comment, and plaintiffs "have relied upon the assumption that Loveland ratepayers were part of MSD's global system" in "craft[ing] the complex, multi-year infrastructure improvements that have begun the implementation of the remedies required by the Consent Decree[]."  Accordingly, the district court granted the Board's motion for judgment on the pleadings; declared that Loveland "shall not be permitted to unilaterally terminate its 1985 agreement with the Board"; and enjoined Loveland "from attempting to modify the Consent Decree in this matter by collateral attack, through termination of the 1985 Agreement or otherwise, while Consent Decree obligations are pending."  Loveland timely appeals.

II.

On appeal, Loveland challenges the district court's subject-matter jurisdiction and its grant of judgment on the pleadings.

First, Loveland argues that the district court lacked subject-matter jurisdiction over the present action.  It contends that the Board's request for declaratory relief involves no federal question because it is a state-law contract dispute in which the Board "is only seeking a determination that Loveland may not unilaterally terminate the 1985 Agreement." (internal quotation marks omitted).  In support of this argument, Loveland relies on *City of Warren v. City of Detroit*, 495 F.3d 282 (6th Cir. 2007), which it characterizes as "nearly identical to this case."  In *City of Warren*, Warren filed a complaint in the Circuit Court for the County of Macomb, Michigan, alleging that Detroit, which provided Warren's water, breached its contractual obligation to charge "reasonable" rates by raising its rates to pay for costs associated with the obligations it assumed in a consent decree with the EPA; Warren also alleged that Detroit, in so doing, violated Mich. Comp. Laws § 123.141(2), which required water rates to be based on the actual cost of service as determined under the utility basis of rate-making. *Id.* at 284. Warren sought damages for breach of contract, an injunction to prevent Detroit from charging unreasonable rates, and an order requiring Detroit to make an accounting of all factors included in establishing the water rates. *Id.*

Detroit removed the case to the United States District Court for the Eastern District of Michigan, arguing that Warren's action arose under the judgments and orders entered pursuant to the federal Clean Water Act and the federal Clean Air Act in *United States v. City of Detroit*, No. 77-71100, 2000 WL 371795 (E.D. Mich. Feb.7, 2000) and that removal was necessary to protect the integrity of the orders in that case. *Id.* at 285. Warren moved to remand to state court. The district court denied Warren's motion, reasoning that the case was properly removed to federal court pursuant to 28 U.S.C. § 1441(b) as arising under federal law because Warren sought relief that had an adverse effect upon or was inconsistent with the federal consent decree. *Id.* On appeal, this court reversed. The *City of Warren* panel noted that "[o]nly state-court actions that originally could have been filed in federal court may be removed to federal court by the defendant," *id.* at 286 (quoting *Caterpillar, Inc. v. Williams*, 482 U.S. 386, 392 (1987)), and that Warren's action could not have been originally filed in federal court because it stated a contract claim and a claim for violation of state statute, *id.* We also concluded that having an adverse impact on a consent decree was not enough to establish federal question jurisdiction because, under that logic, "a slip-and-fall case would be removable to federal court because a damage award would affect DWSD's finances and consequently its ability to comply with the consent judgment, a result that would abrogate the well-pleaded complaint rule set forth in *Caterpillar* and *Franchise Tax Board*." *Id.*

The *City of Warren* panel concluded that there was no substantial federal question jurisdiction because "Warren's contract claim alleges that Detroit has included certain costs in the water rates that are not reasonable, as required by the contract" and "Warren's statutory claim alleges that Detroit has included costs in the water rates that are not included in the actual cost of service as determined under the utility basis of rate-making, as required by Michigan statute." *Id.* at 287. It explained that "[n]either of these claims raises a question of federal law because the consent judgments entered in the EPA case lack the power to supersede Warren's contractual rights or the Michigan statute." *Id.* at 287. Finally, the court considered whether Warren's claim was "really" one of federal law, i.e., an attempt "to defeat removal by omitting to plead necessary

federal questions in a complaint," and it concluded that it was not. *Id.* (quoting *Franchise Tax Bd. v. Constr. Laborers Vacation Trust*, 463 U.S. 1, 22 (1983)). The reason, the court explained, was that there was "no allegation that Warren's claims are identical to federal claims, or are completely preempted by federal law . . ." *Id.* at 287.

We find *City of Warren* distinguishable. Here, in contrast to *City of Warren*, the Board's complaint neither asks the court to interpret the terms of the contract nor alleges a violation of a state statute; rather, the Board seeks a determination that Loveland may not terminate the 1985 Agreement in its entirety because of the consent decree. Moreover, this case involves more than simply the economic consequence of the consent decree on non-parties; it involves the attempted removal of property, the Polk Run Segment, from the consent decree obligations. *Cf. Syngenta Crop Protection, Inc. v. Henson*, 537 U.S. 28, 33-34 (2002), *overruling Bylinski v. City of Allen Park*, 169 F.3d 1001, 1002-03 (6th Cir.1999) (holding that there was jurisdiction since suit "pose[d] an imminent threat to the integrity of the [orders] because it could *adversely affect the financing mechanism* in those orders") (emphasis added).

To be sure, Loveland was not a party to the consent decree. However, it cannot escape the district court's jurisdiction over its consent decree through artful pleading and argument. Whether Loveland may terminate the 1985 Agreement and escape the financial impact of the consent decree as a non-party is an issue to be resolved on the merits rather than by a challenge to the district court's jurisdiction. Unlike *City of Warren*, which was a removal case for which federal question jurisdiction under the well-pleaded complaint rule was determined by reference to Warren's state court complaint, jurisdiction in this case is based on the Board's federal complaint for declaratory judgment which requests that the district court enforce its consent decree. Because the district court retains jurisdiction to police its consent decrees, *Waste Mgmt. of Ohio, Inc. v. City of Dayton*, 132 F.3d 1142, 1144-46 (6th Cir. 1997), we hold that the Board's complaint presents a federal question.

Furthermore, subject-matter jurisdiction properly lies under the substantial federal question doctrine. In *Mikulski v. Centerior Energy Corp.*, 501 F.3d 555, 568 (6th

Cir. 2007) (en banc) (citing *Grable & Sons Metal Prods., Inc. v. Darue Eng'g & Mfg.*, 545 U.S. 308, 314 (2005)), this court explained that a federal court has subject-matter jurisdiction where:  "(1) the state-law claim . . . necessarily raise[s] a disputed federal issue; (2) the federal interest in the issue [is] substantial; and (3) the exercise of jurisdiction [does] not disturb any congressionally approved balance of federal and state judicial responsibilities."  This case satisfies all three criteria.  The first factor is met because, insofar as this declaratory judgment action is the inverse of Loveland's state law claim, it necessarily raises a disputed federal issue: whether the federal Clean Water Act consent decree requiring upgrades to the Polk Run Segment can be modified by removal of that portion of the sewer system from the consent decree obligations. Because the consent decree applies to the Polk Run Segment, it is impossible to resolve Loveland's request to terminate the 1985 Agreement and the Board's request for declaratory relief without analyzing and interpreting the consent decree.

The second factor regards the substantiality of the federal interest.  In making this determination, we consider whether:  (1) the case includes a federal agency; (2) the federal question is important; (3) the decision on the federal question will resolve the case; and (4) the decision will affect other cases.  *Mikulski*, 501 F.3d at 570 (citation omitted).  Here, there is a substantial federal interest because (1) federal agencies negotiated the consent decree upgrades to the Polk Run System; (2) the consent decree was and is intended to comply with a federal statute and impacts thousands of ratepayers throughout the Cincinnati metropolitan area; (3) the resolution of Loveland's obligations, if any, under the consent decree will resolve the case because whether Loveland may terminate the 1985 Agreement or terminate or modify its obligations under the consent decree are dispositive, not incidental, issues; and (4) the decision on the federal question will have a broad impact because, depending on the outcome of this litigation, other entities may seek to circumvent consent agreements entered into between the federal government and cities around the nation to enforce the Clean Water Act.

Finally, under the last prong of the substantial federal question inquiry, we must "inquire into the risk of upsetting the intended balance by opening the federal courts to an undesirable quantity of litigation." *Mikulski*, 501 F.3d at 573. In the present case, the district court's exercise of jurisdiction does not disturb any congressionally approved balance of federal and state judicial responsibilities. Because federal courts are already charged with enforcing the Clean Water Act, and federal consent decrees, by definition, stem from a matter already within the court's jurisdiction, the district court's exercise of jurisdiction over this matter would not open the floodgates of litigation that might overwhelm the federal courts. Indeed, a contrary holding that the district court lacks jurisdiction could allow litigants to use the state courts as a vehicle to undermine a federal court's ability to police its consent decrees when the state-court action is, in Loveland's words, "the exact inverse" of the federal court action. Moreover, at this juncture, the state court action has been dismissed, although the judgment has been appealed. As the state court explained when it dismissed Loveland's complaint:

> "[T]he federal court is in a better position to [decide the issues here] since any decision that this Court would make would directly affect the Consent Decrees, over which the federal court has retained jurisdiction. Therefore, since federal consent decrees are at issue, it would make sense to have that court also resolve any issues that have a direct impact on the implementation of those consent decrees."

For these reasons, we hold that the district court properly exercised subject-matter jurisdiction.[1]

### III.

Next, Loveland argues that the district court erred in granting the Board's motion for judgment on the pleadings. Loveland asserts that it was not a party to the consent decree and accordingly is not bound by it. Further, it claims that the doctrines of laches and equitable estoppel are "fact intensive" inquiries inappropriate for disposition on the

---

[1] Loveland also argues that the All Writs Act, 28 U.S.C. § 1651, and the Federal Declaratory Judgment Act, 28 U.S.C. §§ 2201 & 2202, did not confer jurisdiction upon the district court. In view of our disposition of the case, and because we do not read the district court's opinion to rely on the All Writs Act or the Federal Declaratory Judgment Act as a basis for *subject-matter* jurisdiction, we find it unnecessary to address these issues.

pleadings, and such defenses are state law affirmative defenses more properly asserted in a state action.

We review a district court's grant of judgment on the pleadings under Rule 12(c) using the same de novo standard of review applicable to orders of dismissal under Rule 12(b)(6). *Tucker v. Middleburg-Legacy Place*, 539 F.3d 545, 549 (6th Cir. 2008). "For purposes of a motion for judgment on the pleadings, all well-pleaded material allegations of the pleadings of the opposing party must be taken as true, and the motion may be granted only if the moving party is nevertheless clearly entitled to judgment." *Id.* (quoting *JPMorgan Chase Bank, N.A. v. Winget*, 510 F.3d 577, 581 (6th Cir. 2007)). In this circuit, laches is "a negligent and unintentional failure to protect one's rights." *Elvis Presley Enters., Inc. v. Elvisly Yours, Inc.*, 936 F.2d 889, 894 (6th Cir. 1991). "A party asserting laches must show: (1) lack of diligence by the party against whom the defense is asserted, and (2) prejudice to the party asserting it." *Herman Miller, Inc. v. Palazzetti Imports & Exports, Inc.*, 270 F.3d 298, 320 (6th Cir. 2001). Equitable estoppel requires a showing that there was: "(1) [a] misrepresentation by the party against whom estoppel is asserted; (2) reasonable reliance on the misrepresentation by the party asserting estoppel; and (3) [a] detriment to the party asserting estoppel." *Premo v. United States*, 599 F.3d 540, 547 (6th Cir. 2010).

In this case, the district court ruled that judgment on the pleadings was warranted in favor of the Board because the doctrines of laches and equitable estoppel barred Loveland from challenging the effects of the consent decree. The court explained that Loveland "has proffered no evidence demonstrating excusable delay in asserting its claim, beyond attempting to argue it lacked notice, while as a matter of law, publication in the Federal Register constituted notice." *United States v. Bd. of County Comm'rs of Hamilton County, Ohio*, Nos. 1:02-CV-00107, 1:09-CV-00029, 2010 WL 200326, at *5 (S.D. Ohio Jan. 14, 2010) (citations omitted). It also concluded that

> "[t]he parties to the Consent Decrees reasonably relied on Loveland's silence as they crafted the complex, multiyear infrastructure improvements that have begun the implementation of the remedies required by the Consent Decrees . . . . [and that] Loveland's silence . . .

misled Defendants into relying on Loveland's participation in the global remedies called for by the Consent Decrees, the Court finds Loveland should be equitably estopped from withdrawing from MSD until after full implementation of the Consent Decrees."

*Id.* Accordingly, the district court found that an injunction was necessary because "inequity would result if Loveland were permitted to enforce its now-stale claim to terminate the 1985 agreement as such termination would affect the implementation of the Consent Decrees." *Id.* We agree.

Loveland's contention that it is not bound by the consent decree, while accurate, is immaterial. For the reasons detailed by the district court, Loveland forfeited its rights to contest the effects of the consent decree by unreasonably sitting on its rights. Loveland's actions of not objecting to the proposed consent decree, declining to participate in the pre-approval hearings, and allowing the expansion of the MSD Polk Run Segment while obtaining its benefits for four years, weigh heavily against Loveland's claim of relief. Loveland's additional argument that the district court erred in granting judgment on the pleadings because laches and equitable estoppel are usually "fact intensive" inquiries, *see*, *e.g.*, *Kourtis v. Cameron*, 419 F.3d 989 (9th Cir. 2005) (overruled on other grounds); *Axcan Scandipharm Inc. v. Ethex Corp.*, 585 F. Supp. 2d 1067 (D. Minn. 2007), is similarly unpersuasive. Here, there was no need for discovery, let alone a trial, because it is undisputed that Loveland had constructive notice of the proposed consent decree, waited five years to bring its claim, and prejudiced the Board by its delay.

Finally, Loveland asserts that laches and equitable estoppel are affirmative defenses under state law that the Board should assert in a state action. Assuming *arguendo* that laches and equitable estoppel are state-law affirmative defenses, Loveland has failed to successfully challenge the federal judgment at issue. The state court action was dismissed in favor of the Board. Our review is not of the state court judgment, but of the district court's judgment. For purposes of our review, the defenses of laches and equitable estoppel were properly raised by the Board and ruled upon by the district court.

IV.

For these reasons, we affirm the judgment of the district court.