The State ex rel. Stokes v. Brunner, Secy. of State.

[Cite as *State ex rel. Stokes v. Brunner,*
120 Ohio St.3d 250, 2008-Ohio-5392.]

(No. 2008–1950—Submitted October 15, 2008—Decided October 16, 2008.)

────────────

**Per Curiam.**

{¶ 1} This is an expedited election case for a writ of mandamus to compel the secretary of state to declare that observers are permitted in all active polling places and to direct local election officials to permit observers in all early-voting locations. Because the secretary of state erroneously advised boards of elections that they are not required to permit duly appointed observers at in-person, absentee-voting locations, we grant the writ.

### Advisory 2008–24

{¶ 2} On September 23, 2008, the secretary of state issued Advisory 2008–24, in which she advised the boards of elections that they are not required to allow election observers during the 35–day, in-person absentee-voting period for the November 4 election:

{¶ 3} "[T]he General Assembly has not specifically provided for election observers during the 35–day in-person absentee voting period immediately preceding Election Day. Additionally, the General Assembly appears to have intended to foreclose such observers during that time by limiting the expressly provided-for presence of observers, with respect to absentee voting, to the processing and counting of absentee ballots. For all of these reasons, I am advising Ohio's boards of elections that they are not required to allow election observers during the 35–day in-person absentee voting period immediately preceding Election Day."

{¶ 4} The secretary of state also cautioned boards of elections against exercising their discretion to permit election observers for in-person absentee voting:

{¶ 5} "Individual boards may receive requests that they exercise their discretion to allow opportunities for observers to be present at board offices or satellite locations during hours when in-person absentee voting takes place. The allow-

ance of these requests may result in court challenges based on disparate treatment between counties. If all boards operate consistently in following the advice contained in this advisory, which is issued pursuant to R.C. 3501.05(B), any litigation regarding this advisory would necessarily be centered on the secretary of state rather than individual boards, allowing boards to proceed with election preparation unhindered by litigation. In addition, no statute provides deadlines for filing requests to be observers or conduct of observers during periods of in-person absentee voting, leaving a board open to challenge on rules established for such observers by that individual board."

## Federal Litigation

{¶ 6} On September 29, the United States District Court for the Southern District of Ohio, Eastern Division, granted a temporary restraining order preventing the enforcement of Advisory 2008–24. *Ohio Republican Party v. Brunner* (Sept. 29, 2008), S.D. Ohio No. 2:08–CV–00913, 2008 WL 4445193, *5. The district court judge concluded that the applicable statute required observers at absentee-voting locations. The next day, the United States Court of Appeals for the Sixth Circuit stayed the district court's order. *Ohio Republican Party v. Brunner* (C.A.6, 2008), 543 F.3d 357, 361–362. The court of appeals observed that insofar as the district court's order was premised upon its interpretation of state law, federal courts lack jurisdiction to enjoin state officials based on state law. Id.

## Appointment of Relator as an Observer and Rejection of His Attempt to Serve

{¶ 7} Relator, Dewey Stokes, is a registered voter and a resident of Franklin County. On September 30, 2008, the Franklin County Republican Party appointed Stokes to be an observer at the alternate polling location in Franklin County during the absentee-voting period of the election. On October 3, Stokes received his credentials to serve as a poll observer in Franklin County.

{¶ 8} On that date, Stokes presented himself at an early-voting location inside Veterans Memorial in Franklin County and announced his intention to serve as an observer. The director and deputy director of the Franklin County Board of Elections informed Stokes that based on the secretary of state's authority, he would not be permitted to serve as an observer. The board officials also handed Stokes a notice stating that pursuant to Advisory 2008–24, the board "is not accepting filings for election observers during the 35–day period for in-person absentee voting." Stokes then left the building.

## Expedited Election Case

{¶ 9} Later that day, Stokes filed this expedited election case for a writ of mandamus to compel the secretary of state to declare that observers are permitted at all active polling places and to direct local election officials to permit observers in all early voting locations "pursuant to the procedures in R.C. 3505.21." The secretary of state filed an answer, and the parties submitted evidence and briefs on October 14 in accordance with a court-ordered schedule.

{¶ 10} This case is now before the court for our consideration of the merits.

## Laches

{¶ 11} The secretary of state asserts that this mandamus case is barred by laches. But laches requires an unreasonable delay or lapse of time in asserting a right. See, e.g., *State ex rel. Craig v. Scioto Cty. Bd. of Elections,* 117 Ohio St.3d 158, 2008-Ohio-706, 882 N.E.2d 435, ¶ 11. Stokes did not unreasonably delay in bringing this expedited election action, which was filed only ten days after the secretary of state issued Advisory 2008–24. Stokes then filed this case on the very day that the local election officials refused to let him serve as an observer for the absentee voting at the county polling location.

{¶ 12} Moreover, like our recent decision in *State ex rel. Colvin v. Brunner,* 120 Ohio St.3d 110, 2008-Ohio-5041, 896 N.E.2d 979, ¶ 29, "this case differs from other cases in which we have applied laches to bar a consideration of the merits of an expedited election action concerning an issue or candidate on an election ballot because it involves the propriety of the *absentee voting* itself"—i.e., here, the issue of whether duly appointed observers are permitted to be present during in-person absentee voting. (Emphasis sic.) And although the secretary of state submitted evidence that permitting observers in some counties might burden understaffed boards of elections, we view these potential concerns as, at best, speculative and insufficient to bar our consideration of the merits of this case. See *State ex rel. Becker v. Eastlake* (2001), 93 Ohio St.3d 502, 505, 756 N.E.2d 1228 ("the fundamental tenet of judicial review in Ohio is that courts should decide cases on their merits").

## Mandamus

{¶ 13} "To be entitled to the writ, relator[ ] must establish a clear legal right to the requested relief, a corresponding clear legal duty on the part of the secretary of state to provide it, and the lack of an adequate remedy in the ordinary course of the law." *State ex rel. Heffelfinger v. Brunner,* 116 Ohio St.3d 172, 2007-Ohio-5838, 876 N.E.2d 1231, ¶ 13. "[I]f the secretary of state 'has, under the law, misdirected the members of boards of elections as to their duties, the matter may be corrected through the remedy of mandamus.'" *State ex rel. Colvin v.*

*Brunner,* 120 Ohio St.3d 110, 2008-Ohio-5041, 896 N.E.2d 979, ¶ 20, quoting *State ex rel. Melvin v. Sweeney* (1950), 154 Ohio St. 223, 226, 43 O.O. 36, 94 N.E.2d 785.

## General Duties of the Secretary of State

{¶ 14} The secretary of state is the state's chief election officer and has duties to "[i]ssue instructions by directives and advisories to members of the boards as to the proper methods of conducting elections," "[p]repare rules and instructions for the conduct of elections," and "[c]ompel the observance by election officers in the several counties of the requirements of the election laws." R.C. 3501.05(B), (C), and (M).

{¶ 15} Stokes claims that the secretary of state has a duty enforceable in mandamus under these provisions and others to direct the boards of elections to permit duly appointed observers at absentee-voting locations.

## R.C. 3505.21 and Related Statutes

{¶ 16} Stokes asserts that he is entitled to the requested extraordinary relief in mandamus because the secretary of state, through Advisory 2008–24, misdirected the boards of elections that they had no legal duty to permit observers at absentee-voting locations.

{¶ 17} Stokes primarily relies on R.C. 3505.21, which requires that duly appointed observers be permitted in the polling place for the precinct during the casting of the ballots:

{¶ 18} *"At any* primary, special, or *general election, any political party supporting candidates to be voted upon at such election* * * * *may appoint* to the board of elections or *to any of the precincts in the* county or *city one person, a qualified elector, who shall serve as observer for such party* * * * *during the casting* and counting *of the ballots* ; provided that separate observers may be appointed to serve during the casting and during the counting of the ballots. * * * Any political party * * * appointing observers shall notify the board of elections of the names and addresses of its appointees and the precincts at which they shall serve. Notification shall take place not less than eleven days before the election on forms prescribed by the secretary of state and may be amended by filing an amendment with the board of elections at any time until four p.m. of the day before the election. The observer serving on behalf of a political party shall be appointed in writing by the chairperson and secretary of the respective controlling party committee. * * * Observers appointed to a precinct may file their certificates of appointment with the presiding judge of the precinct at the meeting on the evening prior to the election, or with the presiding judge of the precinct on the day of the election. Upon the filing of a certificate, *the person named as observer in the certificate shall be permitted to be in and about the polling place for the precinct during the casting of the ballots* and shall be

permitted to watch every proceeding of the judges of elections from the time of the opening until the closing of the polls. The observer also may inspect the counting of all ballots in the polling place or board of elections from the time of the closing of the polls until the counting is completed and the final returns are certified and signed. Observers appointed to the board of elections under this section may observe * * * at any precinct in the county. The judges of elections shall protect such observers in all of the rights and privileges granted to them by Title XXXV of the Revised Code." (Emphasis added.)

{¶ 19} In construing R.C. 3505.21, "our paramount concern is the legislative intent in enacting the statute." *State ex rel. Steele v. Morrissey,* 103 Ohio St.3d 355, 2004-Ohio-4960, 815 N.E.2d 1107, ¶ 21. " 'To discern this intent, we first consider the statutory language, reading words and phrases in context and construing them in accordance with rules of grammar and common usage.' " *Heffelfinger,* 116 Ohio St.3d 172, 2007-Ohio-5838, 876 N.E.2d 1231, ¶ 35, quoting *State ex rel. Choices for South–Western City Schools v. Anthony,* 108 Ohio St.3d 1, 2005-Ohio-5362, 840 N.E.2d 582, ¶ 40.

{¶ 20} A review of the language of R.C. 3505.21 reveals the following pertinent requirements for observers appointed by political parties: (1) the political party appointing the observer must support candidates to be voted upon at the election, (2) the person appointed must be a qualified elector, (3) the appointment must be for any primary, special, or general election, (4) the appointment must be to the board of elections or to any of the precincts in the county or city, (5) the person appointed shall serve as an observer for the party during the casting and counting of ballots, unless the party selects separate observers to serve during the casting of ballots and the counting of them, (6) the political party must notify the board of elections of the names and addresses of the appointees and the precincts at which they will serve as observers, and (7) appointees must file their certificate of appointment with the presiding judge of the precinct.

{¶ 21} It appears uncontroverted that the Republican Party supports candidates to be voted on at the November 4 general election, that Stokes is a qualified elector, that the party notified the board of elections of his appointment as an observer, and that Stokes is prepared to file his certificate of appointment. At issue is (1) whether the absentee-voting period relates to "any primary, special, or general election," (2) whether the appointment of Stokes as an observer is to the board of elections or to any of the precincts of the county or city, and (3) whether the in-person absentee voting is included in the casting and counting of ballots so as to be part of the general election.

{¶ 22} For these remaining requirements, the secretary of state asserts that R.C. 3505.21 applies only to the *November 4 date of the general election,* but the plain language of the statute contradicts the secretary's interpretation. The

general election encompasses the in-person casting of absentee ballots for that election, which is manifestly part of the general election even though some of it may occur before November 4. An election is considered to refer to "the combined actions of voters and officials meant to make a final selection." See *Foster v. Love* (1997), 522 U.S. 67, 71, 118 S.Ct. 464, 139 L.Ed.2d 369; see also *Millsaps v. Thompson* (C.A.6, 2001), 259 F.3d 535, 546. Insofar as the secretary cites other provisions of R.C. 3505.21 that specify time requirements for filing notices and certificates of appointment and reference the day of the election, these provisions must be construed to cover the absentee voting that is part of the election.

{¶ 23} Stokes is also authorized to serve as an observer "during the casting of the ballots" for the general election. "Cast" means "[t]o formally deposit (a ballot) or signal one's choice (in a vote)." See Black's Law Dictionary (8th Ed. 2004) 230. Although the ballots are not actually *counted* for purposes of voting until election day, electors who deposit their absentee ballots at a polling location during the absentee-voting period have cast their ballots under the plain language of R.C. 3505.21 by marking them and formally depositing them. These absentee ballots are being cast for the general election even though casting occurs before the date of the election.

{¶ 24} For the last requirement, Stokes had to be appointed to serve as an observer for either the board of elections or a precinct. On his certificate of appointment, Stokes is listed as an observer for the alternate polling location in Franklin County during the absentee-voting period. "Precinct" is defined as "a district within a county established by the board of elections of such county within which all qualified electors having a voting residence therein may vote at the same polling place," and "[p]olling place" is defined as "that place provided for each precinct at which the electors having a voting residence in such precinct may vote." R.C. 3501.01(Q) and (R). A duly appointed observer "shall be permitted to be *in and about the polling place* for the precinct during the casting of the ballots." (Emphasis added.) R.C. 3505.21.

{¶ 25} For purposes of the in-person absentee voting at issue here, these statutes must be construed in pari materia with R.C. 3501.11(Z), which provides that elections boards have the following duty: "On any day on which an elector may vote in person at the office of the board or at another site designated by the board, consider the board or other designated site a polling place for that day. *All requirements* or prohibitions *of law that apply to a polling place shall apply to the office of the board or other designated site on that day.*" (Emphasis added.) Therefore, the requirements concerning observers at polling places apply to the in-person absentee-voting period for the general election. In effect,

the absentee-voting location serves as the pertinent precinct or polling place for purposes of R.C. 3505.21.

{¶ 26} Because R.C. 3505.21 does not limit its application to election-day voting, we cannot add this requirement to the plain language of the statute. See, e.g., *State ex rel. Columbia Res. Ltd. v. Lorain Cty. Bd. of Elections*, 111 Ohio St.3d 167, 2006-Ohio-5019, 855 N.E.2d 815, ¶ 32 ("We will not add a requirement that does not exist in the statute").

{¶ 27} Nor does the secretary's citation of R.C. 3509.06(F), which provides that "[o]bservers may be appointed under section 3505.21 of the Revised Code to witness the examination and opening of identification envelopes and the counting of absent voters' ballots under this section," warrant a contrary result. R.C. 3509.06(F) applies only to the *counting* of absentee ballots and is thus inapplicable to the issue of observers during the in-person *casting* of absentee ballots, which is governed by the plain language of R.C. 3505.21 and 3501.11(Z).

{¶ 28} Although we cannot create the legal duty enforceable in mandamus, see *State ex rel. Lewis v. Rolston*, 115 Ohio St.3d 293, 2007-Ohio-5139, 874 N.E.2d 1200, ¶ 22, R.C. 3501.05, 3501.11, and 3505.21 set forth the legal duty on the part of the secretary of state to correct her erroneous advisory in order to permit the presence of duly appointed observers during the in-person absentee voting for the November 4 general election.

{¶ 29} Therefore, "we need not defer to the secretary of state's interpretation because it is unreasonable and fails to apply the plain language" of R.C. 3505.21 and 3501.11(Z). See *State ex rel. Myles v. Brunner*, 120 Ohio St.3d 328, 2008-Ohio-5097, 899 N.E.2d 120, ¶ 26, citing *State ex rel. Brinda v. Lorain Cty. Bd. of Elections*, 115 Ohio St.3d 299, 2007-Ohio-5228, 874 N.E.2d 1205, ¶ 30.

## Conclusion

{¶ 30} Based on the foregoing, we grant a writ of mandamus to compel the secretary of state to direct that duly appointed observers are permitted in all active polling places and to forthwith instruct boards of elections to allow observers in all early-voting locations as long as the pertinent requirements of R.C. 3505.21 have been satisfied. By so holding, we emphasize what the secretary of state has previously acknowledged that "[p]oll observers play an important role in assuring the public that election processes are open and transparent, affecting public trust of the process, and thus, the potential for future participation in the democratic process." Secretary of State Directive 2008–29 (Feb. 25, 2008). We do not address Stokes's additional claims concerning public policy and equal protection because they have been rendered moot by our disposition of this case.

Writ granted.

PFEIFER, SLABY, O'DONNELL, and CUPP, JJ., concur.

MOYER, C.J., and WOLFF and LANZINGER, JJ., dissent.

WILLIAM H. WOLFF JR., J., of the Second Appellate District, sitting for LUNDBERG STRATTON, J.

LYNN C. SLABY, J., of the Ninth Appellate District, sitting for O'CONNOR, J.

---

## MOYER, C.J., dissenting.

{¶ 31} I dissent from the judgment granting the writ of mandamus to compel the secretary of state to declare that observers are permitted in all active polling places and to instruct local election officials to permit observers in all early-voting locations. As a policy matter, no one would argue with the beneficial effect poll observers may provide in ensuring the integrity of the voting process and instilling public trust in the election results. See, e.g., Secretary of State Directive 2008–29 (Feb. 25, 2008).

{¶ 32} That is not the issue with which we are presented. The issue here is whether the secretary of state acted reasonably in her application of the pertinent statutory law. The rationale for the majority decision rejects two of the most firmly established principles of law applied consistently by this court:

{¶ 33} 1. Election laws are mandatory and require strict compliance; substantial compliance is acceptable only when an election provision states that it is. See *State ex rel. Grounds v. Hocking Cty. Bd. of Elections*, 117 Ohio St.3d 116, 2008-Ohio-566, 881 N.E.2d 1252, ¶ 21, quoting *State ex rel. Ditmars v. McSweeney* (2002), 94 Ohio St.3d 472, 476, 764 N.E.2d 971; see also *State ex rel. Stoll v. Logan Cty. Bd. of Elections*, 117 Ohio St.3d 76, 2008-Ohio-333, 881 N.E.2d 1214, ¶ 32.

{¶ 34} 2. Courts have a duty to defer to the reasonable interpretation by the secretary of state of pertinent statutory provisions. See *State ex rel. Colvin v. Brunner*, 120 Ohio St.3d 110, 2008-Ohio-5041, 896 N.E.2d 979, ¶ 84; cf. *State ex rel. Myles v. Brunner*, 120 Ohio St.3d 328, 2008-Ohio-5097, 899 N.E.2d 120, ¶ 26 (court must defer to secretary of state's interpretation when it is reasonable).

{¶ 35} When the pertinent provisions, including R.C. 3505.21, are examined here, there is no question that the General Assembly has not provided for observers for in-person absentee voting and that we cannot judicially legislate to add this nonexistent requirement. *State ex rel. Columbia Res. Ltd. v. Lorain Cty. Bd. of Elections*, 111 Ohio St.3d 167, 2006-Ohio-5019, 855 N.E.2d 815, ¶ 32 (court cannot "add a requirement that does not exist in the statute"). For the following reasons, it is evident that the statute applies only to *election-day* voting

and does not impose any specific requirement that duly appointed observers may serve during in-person absentee voting that *precedes* election day.

{¶ 36} First, in his merit brief, Stokes cites part of only one sentence in R.C. 3505.21 to support his claim: "Upon the filing of a certificate, the person named as observer in the certificate shall be permitted to be in and about the polling place for the precinct during the casting of the ballots * * *." Stokes also claims that the "two important phrases" in R.C. 3505.21 are "polling place" and "casting of [the] ballots."

{¶ 37} But as the secretary of state persuasively asserts, "[i]n reviewing a statute, a court cannot pick out one sentence and disassociate it from the context, but must look to the four corners of the enactment to determine the intent of the enacting body." *State v. Wilson* (1997), 77 Ohio St.3d 334, 336, 673 N.E.2d 1347; see also *State v. Jackson*, 102 Ohio St.3d 380, 2004-Ohio-3206, 811 N.E.2d 68, ¶ 34 (applying the foregoing rule of construction to an election statute).

{¶ 38} A review of the full statute reveals that it relates to *election-day* casting and counting of ballots: (1) no person can serve as observer unless the board of elections has been notified, and this notification must be provided by any political party, group of candidates, or committee "not less than *eleven days before the election*"; (2) the notification may be amended by filing an amendment with the board of elections "at any time until four p.m. of *the day before the election*"; (3) committees that advocate or oppose a measure may file a petition to appoint observers "[n]ot later than four p.m. of the *twentieth day prior to an election*"; (4) observers appointed to a precinct "may file their certificates of appointment with the presiding judge of the precinct at the meeting *on the evening prior to the election*, or with the presiding judge of the precinct *on the day of the election*"; and (5) even in the sentence cited by Stokes, an observer's rights are conditioned upon the filing of the certificate, which is tied to the day of the election, and observers "shall be permitted to watch every proceeding of the judges of elections *from the time of the opening until the closing of the polls*," which contemplates the pertinent election day, which is November 4 here. (Emphasis added.) R.C. 3505.21.

{¶ 39} The majority has issued a writ of mandamus to, inter alia, "compel the secretary of state * * * to instruct boards of elections to allow observers in all early-voting locations *as long as the pertinent requirements of R.C. 3505.21 have been satisfied*." The error in this result is revealed when attempting to apply the previously specified timing requirements of R.C. 3505.21, including the time to file a certificate of appointment, which are expressly tied to *election day,* to the absentee-voting period *before* election day. See *State ex rel. Todd v. Felger*, 116 Ohio St.3d 207, 2007-Ohio-6053, 877 N.E.2d 673, ¶ 10 (court has duty to construe statutes to avoid unreasonable or absurd results).

{¶ 40} Here, for example, Stokes attempted to file his certificate of appointment with election officials on October 3, which is neither "on the evening prior to the election" nor "the day of the election," as required by R.C. 3505.21.

{¶ 41} And what effect is the required 11–day notice in R.C. 3505.21 of the appointment of observers if a political party appoints an observer for the absentee-voting period that began on *September 30*, but then provides the notice specified in the statute the requisite 11 days before the November 4 election, i.e., *October 24*? This would mean that observers could begin observing *before* political parties have any duty to notify local boards of elections of their appointment, a result that contradicts the plain language of R.C. 3505.21.

{¶ 42} In effect, the majority's adoption of Stokes's tortured construction of R.C. 3505.21 defies our longstanding precedent that " 'election laws are mandatory and require strict compliance and that substantial compliance is acceptable only when an election provision states that it is.' " See *Grounds,* 117 Ohio St.3d 116, 2008-Ohio-566, 881 N.E.2d 1252, ¶ 21, quoting *Ditmars,* 94 Ohio St.3d at 476, 764 N.E.2d 971; see also *Stoll,* 117 Ohio St.3d 76, 2008-Ohio-333, 881 N.E.2d 1214, ¶ 32.

{¶ 43} Second, a review of related statutes indicates that when the General Assembly has intended to permit observers, including in the context of absentee voting, it has done so with specific, unambiguous language and often while incorporating the procedure specified in R.C. 3505.21. See *Colvin,* 120 Ohio St.3d 110, 2008-Ohio-5041, 896 N.E.2d 979, ¶ 46 ("statutes that relate to the same subject matter must be construed in pari materia so as to give full effect to the provisions"); R.C. 3501.26 ("When the polls are closed after a primary, general, or special election, the receiving officials shall, in the presence of the counting officials and attending observers, proceed * * * "); R.C. 3505.183(D) ("Observers, as provided in section 3505.21 of the Revised Code, may be present at all times that the board is determining the eligibility of provisional ballots to be counted and counting those provisional ballots determined to be eligible"); R.C. 3505.32(B) ("The county executive committee of each political party * * * that was permitted by section 3505.21 of the Revised Code to have a qualified elector serve as an observer during the counting of the ballots at each polling place at an election may designate a qualified elector who may be present and may observe the making of the official canvass"); R.C. 3509.06(F) ("Observers may be appointed under section 3505.21 of the Revised Code to witness the examination and opening of identification envelopes and the counting of absent voters' ballots under this section"); R.C. 3515.04 ("Observers shall be permitted to see the ballots" during a recount); R.C. 3515.13 ("Both the contestor and contestee [in an election contest involving a recount] may appoint one observer").

{¶ 44} If the General Assembly had intended that duly appointed observers be allowed for in-person absentee voting, it could have easily done so, as it has in the provisions cited, including for counting absentee ballots in R.C. 3509.06(F), but the General Assembly did not. See also R.C. 3509.05(A), which provides that when absentee ballots are delivered to an elector at a board of elections, the elector "may retire to a voting compartment provided by the board and there mark the ballots," but does not include any provision for observers during this process.

{¶ 45} In fact, effective January 27, 2006, the General Assembly first adopted no-fault absentee voting. See 2006 Sub.H.B. No. 234. The General Assembly enacted the provisions replacing challengers and witnesses with observers, including R.C. 3505.21, effective June 1, 2006, i.e., *after* no-fault absentee voting had commenced. See 2006 Am.Sub.H.B. No. 3. Again, if the General Assembly had so intended, it could have specified that its newly enacted observer provisions applied to in-person absentee voting. But it did not.

{¶ 46} Stokes's reliance on R.C. 3501.11(Z) does not warrant a different conclusion. That statute provides that elections boards have a duty to, "[o]n any day on which an elector may vote in person at the office of the board or at another site designated by the board, consider the board or other designated site a polling place for that day. *All requirements* or prohibitions *of law that apply to a polling place shall apply to the office of the board or other designated site on that day.*" (Emphasis added.) Although this statute requires boards of elections to treat in-person absentee-voting locations as polling places, it does not confer any independent right on observers when it is not election day.

{¶ 47} Therefore, R.C. 3505.21 and related statutes impose no duty on election officials to permit observers during the in-person absentee voting for the November 4 general election. At a minimum, the foregoing discussion establishes beyond dispute that the secretary of state—the state's chief election officer—has adopted a *reasonable* construction of the pertinent provisions. Consequently, courts, including this one, have a duty to defer to the secretary's reasonable interpretation. *Colvin*, 120 Ohio St.3d 110, 2008-Ohio-5041, 896 N.E.2d 979, at ¶ 57; *Rust v. Lucas Cty. Bd. of Elections*, 108 Ohio St.3d 139, 2005-Ohio-5795, 841 N.E.2d 766, ¶ 13.

{¶ 48} Based on the foregoing, Stokes has established neither a clear legal right nor a corresponding clear legal duty on the part of the secretary of state to permit observers at early-voting locations. Consequently, he is not entitled to the requested extraordinary relief in mandamus, and the writ must be denied. Ultimately, it is the sole province of the General Assembly to weigh the various interests and policies involved to determine whether permitting observers during in-person absentee voting is appropriate, and until it does so, courts have no

authority to legislate a duty that the General Assembly has not yet recognized. *State ex rel. Canales–Flores v. Lucas Cty. Bd. of Elections,* 108 Ohio St.3d 129, 2005-Ohio-5642, 841 N.E.2d 757, ¶ 40, quoting *Johnson v. Microsoft Corp.,* 106 Ohio St.3d 278, 2005-Ohio-4985, 834 N.E.2d 791, ¶ 14 (" 'The Ohio General Assembly, and not this court, is the proper body to resolve public policy issues' ").

{¶ 49} Because the court ignores the plain language of the pertinent statutes, our well-established precedent in election cases to construe election statutes to require strict compliance and avoid unreasonable or absurd results, as well as our equally well-settled duty to defer to the reasonable interpretation of those statutes by the state's chief election officer, I dissent.

WOLFF and LANZINGER, JJ., concur in the foregoing opinion.

————————

Porter, Wright, Morris & Arthur, L.L.P., James P. Hadden, and Matthew D. Crumpton, for relator.

Nancy Hardin Rogers, Attorney General, and Richard N. Coglianese, Damian W. Sikora, and Pearl M. Chin, Assistant Attorneys General, for respondent.