*RECOMMENDED FOR FULL-TEXT PUBLICATION*
Pursuant to Sixth Circuit Rule 206
File Name: 08a0427p.06

# UNITED STATES COURT OF APPEALS

## FOR THE SIXTH CIRCUIT

---

STATE OF OHIO, ex rel. DANA SKAGGS, et al.,

*Relators-Appellants,*

*v.*

No. 08-4585

JENNIFER L. BRUNNER, Secretary of the State of
Ohio, et al.,

*Defendants-Appellees.*

---

Appeal from the United States District Court
for the Southern District of Ohio at Columbus.
No. 08-01077—Algenon L. Marbley, District Judge.

Submitted: November 20, 2008

Decided and Filed: November 25, 2008

Before: KENNEDY, SUTTON, and McKEAGUE, Circuit Judges.

---

## COUNSEL

**ON BRIEF:** John Wolcott Zeiger, Marion H. Little, Jr., Christopher J. Hogan, ZEIGER, TIGGES & LITTLE, Columbus, Ohio, for Appellants. Richard N. Coglianese, Aaron David Epstein, Damian W. Sikora, OFFICE OF THE OHIO ATTORNEY GENERAL, Columbus, Ohio, Patrick J. Piccininni, Anthony E. Palmer, Jr., PROSECUTING ATTORNEY'S OFFICE FOR THE COUNTY OF FRANKLIN, Columbus, Ohio, Caroline H. Gentry, PORTER, WRIGHT, MORRIS & ARTHUR, Dayton, Ohio, for Appellees. Meredith E.B. Bell-Platts, AMERICAN CIVIL LIBERTIES UNION FOUNDATION, Atlanta, Georgia, Carrie L. Davis, AMERICAN CIVIL LIBERTIES UNION OF OHIO, Cleveland, Ohio, Donald J. McTigue, Mark A. McGinnis, LAW OFFICE, LAW OFFICE, Columbus, Ohio, for Amici Curiae.

---

## OPINION

---

PER CURIAM. On November 4, 2008, more than 27,000 voters in Franklin County cast provisional ballots in the various federal, state and local election contests. In reviewing those ballots, the Franklin County Board of Elections determined that roughly 1,000 of them have a potential defect: They do not contain the printed name or signature of the voter. That omission implicates two questions of state law. First, does Ohio law require a provisional ballot to include the name *and* signature of the voter in order to be eligible to be counted? *See* Ohio Rev. Code Ann.

1

§ 3505.183(B)(1). Second, if Ohio law contains such a requirement, should a ballot containing such a defect be counted anyway given Ohio's exemption for mistakes attributable to poll-worker error?

The Ohio Secretary of State, Jennifer Brunner, has taken the position that the 1,000 ballots comply with Ohio law. Claiming that Ohio law prevents some or all of these ballots from being counted, two Franklin County voters filed this action against the Secretary of State and the Board in the Ohio Supreme Court. The Secretary of State responded to the lawsuit by removing it to federal court. The claimants parried this thrust by filing a motion to remand the case back to the Ohio Supreme Court. The district court kept the case, holding that it had authority to resolve the dispute and that, under Ohio law, the ballots should be counted.

Before we can consider the district court's decision on the merits—do these ballots comply with Ohio law?—we must ask ourselves whether the federal courts have the power to resolve this dispute. The short answer is that we do not. In bringing this claim, the claimants relied solely on state law and disclaimed any reliance on federal law, stating that "[n]o federal law claims are asserted." Compl. ¶ 1. And in their request for relief, the claimants sought a writ of mandamus compelling the Secretary to comply with state law—a form of relief that only a state court, not a federal court, has the power to impose. *See Pennhurst State Sch. & Hosp. v. Halderman*, 465 U.S. 89, 106 (1984); *Combs v. Wilkinson*, 315 F.3d 548, 560 (6th Cir. 2002). That normally would end the matter. The federal and state courts traditionally allow claimants to be the masters of their own fate, permitting them to file a lawsuit in whichever court system they prefer and thus permitting them to choose for themselves which body will decide their case—so long as the court in which the case is filed has jurisdiction over their claim.

There are, however, at least two limits on a party's authority to pick its forum. If a party opts to file a complaint in the state court system, the defendant may remove it to federal court if it is one that originally could have been brought there—either because the parties are diverse or because the complaint seeks relief on the basis of federal law. And if a party files a complaint in federal court, the court on its own initiative or on the initiative of one of the parties may certify a pressing question of state law to the state supreme court. *See, e.g.*, R. Prac. Sup. Ct. Ohio XVIII § 1; *Planned Parenthood of Cincinnati Region v. Strickland*, 531 F.3d 406, 410 (6th Cir. 2008).

The claimants opted to file this case in state court, and no basis for removing the case to federal court exists. The diversity exception does not apply because, as will generally be the case, the parties to this election dispute all reside in the same State. And the federal-question exception does not apply because the claimants did not rely on federal law in bringing their claim and indeed expressly disclaimed relying on federal law. In her notice of removal, the Secretary claimed jurisdiction based on two consent decrees previously entered by the district court regarding provisional-voting issues. That the Secretary of State and the plaintiffs in *another* lawsuit have entered into a consent decree in federal court adopting their agreement about the meaning of these provisions does not change matters. A consent decree binds only the parties to the settlement agreement, not the rest of the world or for that matter today's claimants (who had no say in what the consent decree said). Otherwise, state officials and a willing claimant could enter into federal-court consent decrees embracing their preferred interpretation of a state law and forever prevent the final interpreter of state law—the state supreme court—from deciding what it means. That is not how our federal system typically decides what a state law means.

Even if the Secretary had authority to remove this action to federal court, we should point out, we likely would have sought the Ohio Supreme Court's input on the meaning of these state-law provisions—by certifying the questions to the Court to consider in the first instance. No federal court has the final say on what Ohio law means. Even a decision by the highest federal court, the United States Supreme Court, about the meaning of an Ohio law has no more binding authority on the Ohio Supreme Court than a decision of the Michigan Supreme Court or for that matter any other

court. The threshold question in this case is what Ohio law means. And the stakes of this dispute—one federal and two state legislative races—make it quite sensible, even aside from the intricacies of the removal doctrine, to find out what the ultimate arbiter of Ohio law has to say about the matter before, rather than after, the provisional-vote-counting process has been irreversibly conducted during this election season. For these reasons and those elaborated below, we vacate the district court's decision and remand the case to the Ohio Supreme Court to resolve the claimants' state-law causes of action.

I.

When individuals go to the polls on election day, they may be prohibited from casting an ordinary vote for any number of reasons—say, because their name does not appear on the official list of eligible voters for the polling place or because they did not bring an acceptable form of identification. *See* Ohio Rev. Code Ann. § 3505.18. Rather than allowing poll workers to turn these voters away, federal and Ohio law permit the voters to cast provisional ballots—votes that are not counted until the voter's registration and eligibility are confirmed. *See* 42 U.S.C. § 15482(a); Ohio Rev. Code Ann. § 3505.181(A). To make confirmation possible, Ohio law typically requires the voter to complete a provisional-ballot "affirmation," in which the voter attests that he is both registered and eligible to vote. Ohio Rev. Code Ann. § 3505.181(B)(2). The affirmation—a standard form printed on the face of the ballot envelope—contains blanks for the voter's printed name and signature among other things. *Id.* § 3505.182. After completing the affirmation "before the election official," the voter fills out the provisional ballot, seals it in the envelope and submits it to election officials. *Id.* § 3505.181(B).

Once the polls have closed on election day, precincts deliver the provisional ballots (along with all of the regularly cast ballots) to the county boards of elections, where the boards compare the information contained in the written affirmation with their own records to "determine whether the individual who cast the provisional ballot is registered and eligible to vote in the applicable election." *Id.* § 3505.183(B)(1). If the provisional-ballot voter completed an affirmation, the statute provides that his ballot is only "eligible to be counted" if his "name and signature" appear on the affirmation. *Id.* § 3505.183(B)(1)(a). If the provisional voter "decline[d] to execute" the affirmation, the voter's name, "written by either the individual or the election official at the direction of the individual," must be on the affirmation. *Id.* § 3505.183(B)(1).

Four developments form the backdrop to today's dispute. First, on March 31, 2008, a member of the Secretary of State's office responded to an inquiry from the Franklin County Board of Elections about the meaning of these provisions. He responded by saying that the "[n]ame AND signature are required" under §3505.183(B)(1)(a) in order for a ballot to be eligible to be counted, and the Board proceeded to interpret the provision on this basis. Compl., Ex. B at 2.

Second, in October 2008, shortly before election day, the United States District Court for the Southern District of Ohio entered two orders concerning provisional ballots in another case—one still pending from the 2006 election that presented federal constitutional challenges to Ohio's provisional-ballot and voter-identification laws. *See Northeast Ohio Coalition for the Homeless v. Brunner* (*Ohio Coalition for the Homeless*), No. 2:06-cv-896 (S.D. Ohio filed Oct. 24, 2006). (Apparently the case was still pending because the parties and the court had not resolved the claimants' request for attorney fees.) Shortly before election day, the parties in the case entered into a settlement, by which the Secretary agreed to issue a statewide interpretation of the provisional-voting laws—what became Directive 2008-101 and which lays out general state-wide rules for boards of elections to apply in determining how to count provisional ballots. On October 24 the district court, "[b]y agreement of the Plaintiffs and the Secretary of State," adopted Directive 2008-101 as an order of the court. Order at 1, *Ohio Coalition for the Homeless*, No. 2:06-cv-896 ("10/24 Order"). Soon thereafter, the parties to the same case reached a second agreement—that, consistent

with state law, provisional ballots should not be rejected if any defects in them were caused by poll-worker error. On October 27, in the aftermath of this agreement, the district court entered a second order directing the Secretary to tell the county boards of elections that provisional ballots should not be rejected due to poll-worker error, though the order did not purport to define what constitutes poll-worker error. Order at 2, *Ohio Coalition for the Homeless*, No. 2:06-cv-896 ("10/27 Order"). The Secretary then issued Directive 2008-103 along these lines.

Third, on election day, November 4, 2008, approximately 27,000 provisional ballots were cast in Franklin County, Ohio. Of those, around 1,000 are deficient in one of three ways: (1) the affirmation has a voter's signature but no printed name, (2) the affirmation has a printed name but no signature or (3) the affirmation has both a signature and printed name, but either one or both of those things are in the wrong location on the affirmation.

Fourth, two members of the Franklin County Board of Elections disagreed with two other members of the Board and the Secretary of State over whether to count these ballots. Citing the language of the relevant Ohio laws, the March 2008 guidance received from the Secretary's office and Directives 2008-101 and 2008-103, two Board members took the position that provisional ballots suffering from these deficiencies were not "eligible to be counted" under Ohio law. The Secretary and two other Board members took the position that the ballots should be counted as long as the Board could verify that "the person is registered to vote, voted in the correct precinct, and that the person was not required to provide additional information/ID within 10 days." Compl., Ex. A at 7.

On November 13, 2008, two Franklin County voters, Dana Skaggs and Kyle Fannin, filed a complaint in the Ohio Supreme Court against the Secretary and the Board arguing that the deficient ballots could not be counted under Ohio law and seeking a writ of mandamus ordering the Secretary to direct the county boards of elections not to count provisional ballots where the written affirmation does not contain both a printed name and a signature in the correct place on the affirmation. Compl. at 15. The Secretary removed the action to federal district court. The claimants and the Board filed separate motions to remand, challenging the removal on the grounds that the complaint did not state any claims arising under federal law and that it violated the "rule of unanimity," which requires all defendants to join in a removal petition, *see Loftis v. United Parcel Service, Inc.*, 342 F.3d 509, 516 (6th Cir. 2003). For her part, the Secretary of State moved to realign the parties, arguing that the Board's interests lined up with the claimants, not the Secretary. After granting the Secretary's motion to realign the Board as a plaintiff, the district court denied the motions to remand. Order at 1, 12, *State of Ohio ex rel. Skaggs v. Brunner*, No. 2:08-cv-1077 (S.D. Ohio Nov. 17, 2008).

The parties filed cross motions for summary judgment on the merits, and the district court granted summary judgment in favor of the Secretary. Opinion and Order at 1, 11, *State of Ohio ex rel. Skaggs v. Brunner*, No. 2:08-cv-1077 (S.D. Ohio Nov. 20, 2008). The court held that Ohio law imposed a duty on poll workers to verify that a voter had properly completed the provisional-ballot-envelop affirmation before accepting the voter's provisional ballot, that the deficient ballots were the result of poll-worker error and that the Board therefore should count the ballots. *See id.* at 11–15.

## II.

In challenging the district court's decision, the claimants first raise two jurisdictional arguments—that the removal violates the rule of unanimity and that the removal was improper because the complaint does not rely on federal law. Because we agree that the complaint does not present a federal question and because no other basis for removal exists, we need not reach the rule-of-unanimity question or for that matter the merits of the district court's decision.

Federal courts are courts of limited jurisdiction. Unlike state trial courts, they do not have general jurisdiction to review questions of federal and state law, but only the authority to decide cases that the Constitution and Congress have empowered them to resolve. When a party opts to file a complaint in state court, the federal courts must honor that choice unless Congress has authorized removal of the case. *See Rivet v. Regions Bank of La.*, 522 U.S. 470, 474 (1998); 28 U.S.C. § 1441(a). Absent diverse parties or absent one of the other express (though rarely relied upon) grounds for removal, *see* 28 U.S.C. §§ 1442–1444—none of which applies here—the defendant may take the dispute to federal court only if the plaintiff's claim "aris[es] under" federal law, 28 U.S.C. § 1441(b); *see Mikulski v. Centerior Energy Corp.*, 501 F.3d 555, 560 (6th Cir. 2007) (en banc). A party seeking to invoke the jurisdiction of the federal courts—here the Secretary of State—bears the burden of establishing that such jurisdiction exists. *See Brittingham v. Gen. Motors Corp.*, 526 F.3d 272, 277 (6th Cir. 2008). And a dispute over the removal jurisdiction of a federal district court gets a fresh look on appeal. *See City of Warren v. City of Detroit*, 495 F.3d 282, 286 (6th Cir. 2007).

In "determin[ing] whether [a] claim arises under federal law," we look only to the "well-pleaded allegations of the complaint and ignore potential defenses" that the defendant may raise. *Mikulski*, 501 F.3d at 560 (internal quotation marks omitted). Even "defense[s] that rel[y] on the preclusive effect of a prior federal judgment or the pre-emptive effect of a federal statute," *id.* (internal quotation marks omitted), or that are "anticipated in the plaintiff's complaint" are irrelevant, as they do not form "part of a plaintiff's properly pleaded statement of his or her claim," *Rivet*, 522 U.S. at 475 (internal quotation marks omitted). Although the well-pleaded-complaint rule focuses on what the plaintiff alleges, it allows a court to look past the words of a complaint to determine whether the allegations, no matter how the plaintiff casts them, ultimately involve a federal question. In addition to causes of action expressly created by federal law, *see City of Warren*, 495 F.3d at 286, federal-question removal thus also reaches ostensible state-law claims that (1) necessarily depend on a substantial and disputed federal issue, (2) are completely preempted by federal law or (3) are truly federal-law claims in disguise. *See Mikulski*, 501 F.3d at 560.

In filing this complaint in the Ohio Supreme Court, the claimants presented a single cause of action under state law and sought a writ of mandamus and injunctive relief as a remedy. Compl. at 15–16. Their complaint expressly disclaimed any reliance on federal law. Compl. ¶ 1. And none of the three grounds for otherwise characterizing their complaint as a federal question applies: (1) Their claim does not necessarily depend on a substantial federal issue; (2) their claim is not completely preempted by federal law; and (3) there is no cognizable basis for saying that they have filed an ersatz state-law claim that, when all is said and done, amounts to nothing more than a federal claim.

Our esteemed district-court colleague, who as is so often the case in an election dispute was given little time to resolve this matter, reached a different conclusion. The court concluded that the complaint arose under two separate sources of federal law: the two consent decrees that the court had issued in the *Ohio Coalition for the Homeless* case, and the Equal Protection Clause of the United States Constitution. We consider each ground in turn.

*Does the complaint allege a violation of the consent decrees or turn on them*? No. The claimants, to start with, did not allege that the Secretary had violated the consent decrees or any other federal court order. In the statement of the claim and the prayer for relief, the complaint does not invoke the consent decrees, and indeed it never mentions either consent decree. The most that can be said is that, at one point in the complaint, the claimants mention the Secretary's Directive 2008-101, though not the consent decree. *See* Compl. ¶ 18. But that reference was not in the context of alleging that the Secretary had violated a federal court order; it was in the context of alleging that the Secretary had offered one interpretation of the relevant statutes before the election and had offered another interpretation of the statutes after the election when the significance of these

provisional-ballot-counting issues had become apparent, *see id.* ¶¶ 17–22. Nowhere did the claimants allege that the Secretary, by adopting a different interpretation of the state laws on November 10, had "violated" her prior administrative directive or the court order that "adopt[ed] and annexe[d]" it, 10/24 Order at 1. To read the complaint any other way would suggest that the *defendant*, not the claimants, is "the master of [their] complaint." *NicSand, Inc. v. 3M Co.*, 507 F.3d 442, 458 (6th Cir. 2007) (en banc).

The Secretary alternatively seeks to uphold the removal decision on the ground that, even if the complaint alleged only state-law grounds for relief, it still "necessarily depends on resolution of a substantial question of federal law." *Franchise Tax Bd. v. Constr. Laborers Vacation Trust*, 463 U.S. 1, 28 (1983). The substantial-federal-issue exception opens the federal removal door only if "(1) the state-law claim . . . necessarily raise[s] a disputed federal issue; (2) the federal interest in the issue [is] substantial; and (3) the exercise of jurisdiction [will] not disturb any congressionally approved balance of federal and state judicial responsibilities." *Mikulski*, 501 F.3d at 568. As the Secretary and the district court see it, the complaint meets these requirements because this action cannot proceed without interpreting the two federal-court consent decrees, which incorporate the Secretary's two advisory directives. But, as we see it, the complaint does not satisfy any of these requirements, much less all three of them.

*First*, the consent decrees do not transform this state-law cause of action into a federal cause of action for a threshold reason: The decrees represent a settlement agreement between the parties to the *Ohio Coalition for the Homeless* case and thus cannot control the outcome of a case involving different parties, much less insulate a question of Ohio law from review by the one court with a final say over its meaning: the Ohio Supreme Court. Consent decrees derive their authority from the parties' consent, which permits the parties to give away their rights, not the rights of third parties. *See City of Warren*, 495 F.3d at 287. That a defendant in a state-court lawsuit has previously entered into an agreement with other parties about the meaning of state law that was approved in a federal-court consent decree does not inject a substantial federal issue into a subsequent state-court case. *See id.*

Moreover, even if for the sake of argument we were to suppose that these orders bound the Secretary in this case, that at most would raise a defense to this action; it would not make the orders an essential element of the claim. Unlike the case on which the district court most heavily relied, *EBI-Detroit, Inc. v. City of Detroit*, 279 F. App'x 340 (6th Cir. 2008), where the plaintiffs explicitly alleged that the defendant had contravened an existing district-court order and therefore had to prove that point to obtain relief, *see id.* at 346, the claimants in this case have not brought any claims premised on the Secretary's failure to adhere to the terms of the consent decrees. If the *Ohio Coalition for the Homeless* orders come into play at all in this case, that will be because the Secretary takes the position that the orders tie her hands and preclude her from adopting any inconsistent interpretation of the statutes. But the issue-preclusive shadow cast by a prior federal decision is an affirmative defense, not an ingredient of the claimants' claim, and as such it cannot convert a state-law claim into a federal one. *See Rivet*, 522 U.S. at 476–77.

*Second*, the federal interest in this dispute is not "substantial," as measured by the four factors we consider in assessing this point: (1) whether a federal agency is involved; (2) whether the federal question is important; (3) whether a decision on the federal question will resolve the parties' dispute; and (4) how many other cases a decision on the issue in this case will resolve. *See Mikulski*, 501 F.3d at 570. For one, no federal agency is involved in this dispute. It involves only Ohio voters and Ohio public officials. In this respect, too, the instant facts differ materially from those presented in *EBI-Detroit*, where the complaint alleged misconduct by a specially appointed federal officer in the performance of his appointed duties, a circumstance necessarily adding to the substantiality of the federal question presented. *See* 279 F. App'x at 346.

For another, the Secretary's directives, even though they have been included in two federal-court consent decrees, do not create important federal questions in any meaningful sense. The orders do not contain any conclusion that Ohio's election laws violate any provision of positive federal law or that the Constitution, a congressional enactment or an agency regulation requires reading the state statutes in a certain way—say, to avoid constitutional doubts. Rather, both orders by their terms reflect only the parties' mutual agreement about the meaning of these state laws, *see* 10/24 Order at 1; 10/27 Order at 1, a subject on which the state courts presumptively have the last word, *cf. Coalition to Defend Affirmative Action v. Granholm*, 473 F.3d 237, 246 (6th Cir. 2006). No less importantly, the Secretary's directive with respect to poll-worker error says nothing at all about what constitutes poll-worker error under state (or federal) law, much less about whether a voter's failure to sign a provisional ballot application or include one's name on it constitutes poll-worker error. And the other directive merely restates Ohio law without offering any elaboration on how it would apply to the ballot-counting problem presented in this case. The mere incorporation of state-law requirements in a federal-court consent decree does not automatically create a federal question, much less an important one.

For still another reason, the interpretation of these consent decrees will not resolve this dispute. As noted, they have *no* direct bearing on the merits of this lawsuit because they merely reflect an agreement among parties to a different suit. And because the decrees offer no specific guidance about how to resolve these disputes, other than by reciting or paraphrasing the relevant language of the state laws, our interpretation of them here would be no more helpful to our resolution of this case than our interpretation of the underlying state laws themselves.

For a final reason, no one suggests that the federal court's resolution of this issue will head off future lawsuits. Exactly the opposite, it would seem, is more likely to happen. Until the Ohio Supreme Court finally decides what these state-law provisions mean, injured parties are bound to continue to ask that Court to resolve this dispute once and for all—as indeed is their right.

*Third*, this is hardly a case where "the exercise of jurisdiction [will] not disturb any congressionally approved balance of federal and state judicial responsibilities." *Mikulski*, 501 F.3d at 568. Congress's most recent handiwork concerning provisional ballots, the Help America Vote Act of 2002, Pub. L. No. 107-252, Title III, § 302, 116 Stat. 1666, 1706 (codified at 42 U.S.C. § 15301 *et seq.*), leaves no doubt which lawmaking body—the federal or state governments—has plenary authority over the counting of provisional ballots. It "conspicuously leaves . . . to the States" the determination of "whether a provisional ballot will be counted as a valid ballot," *Sandusky County Democratic Party v. Blackwell*, 387 F.3d 565, 577 (6th Cir. 2004); *see* 42 U.S.C. § 15482(a)(4). To allow federal courts free rein in determining whether and under what circumstances a partially deficient provisional ballot will count—under state law—would deprive state courts of their long-established role as the "final arbiter on matters of state law," *Planned Parenthood*, 531 F.3d at 410. If all it takes to transform purely state-law questions into a substantial issue of federal law—sufficient to end state courts' supremacy in interpreting their own statutes—is the agreement of two putatively opposed parties and one federal judge incorporating an interpretation of that law into a consent decree, it is hard to imagine any state-law matter lying outside a federal court's reach.

Accordingly, we hold that the claimants' cause of action does not satisfy any of the three required elements of the substantial-federal-issue exception to the well-pleaded-complaint rule, as set forth in *Mikulski*. We therefore conclude that the Secretary has failed to carry her burden of demonstrating that the claimants' state-law claim necessarily presents a substantial federal question that warrants removal to federal court.

*Did the complaint allege a violation of the Equal Protection Clause?* No. On its face, the complaint does not set forth an equal-protection claim, and indeed it explicitly disavows *any* reliance on federal law: "No federal law claims are asserted." Compl. ¶ 1.

The Secretary nonetheless claims that the complaint amounts to artful pleading because it invokes the substance of an equal-protection claim even if it leaves the form of such a claim behind. *See Mikulski*, 501 F.3d at 561. In making this argument, she points to paragraphs 4 and 5 of the complaint where, in a section devoted to identifying the relevant parties, the claimants say that they are "bring[ing] this action to assure that [their] vote[s are] not diluted as a result of the misdirected instructions of the Secretary of State to count provisional ballots that are not lawful or valid under Ohio law." Compl. ¶ 5. Yet the claimants made these allegations not in order to raise an equal-protection claim *sotto voce* but in order to gain admission to the state courts. Under Ohio law, the claimants were *required* to identify an injury to establish standing to bring this claim. *See State ex rel. Toledo v. Lucas County Bd. of Elections*, 765 N.E.2d 854, 857 (Ohio 2002) (per curiam) ("The applicable test for standing is whether [the] relator would be directly benefited or injured by a judgment in this case, and this test applies to mandamus actions concerning election matters.").

As with all allegations that a State is counting ballots it should not, one form of injury caused by that problem will be vote dilution. But that reality does not preclude the claimants from relying on state law to redress the harm, particularly when the source of the injury is an alleged misinterpretation of Ohio law. Even if it is true that the claimants might have brought a separate federal constitutional claim to redress this injury, a point on which we need not take a stand, neither the federal courts nor a state official may force them to do so.

Because the Equal Protection Clause also is not a "necessary element of one of the [claimants'] well-pleaded state claims," *Franchise Tax Bd.*, 463 U.S. at 13, this case does not fit within that "special and small category" of cases finding federal jurisdiction on that ground, *Empire Healthchoice Assurance, Inc. v. McVeigh*, 547 U.S. 677, 699 (2006). The complaint alleges that the Secretary's instructions to the Board violate several Ohio statutes—claims that do not "necessarily depend[]," *Franchise Tax Bd.,* 463 U.S. at 28, on the resolution of any kind of equal-protection question. The district court, it is true, identified the specter of an equal-protection problem: the chance that a ruling in favor of the claimants might lead to non-uniform provisional vote counting across counties. But such a claim is not a "necessary element of one of the well-pleaded state claims," *Franchise Tax Bd.*, 463 U.S. at 13, but at best a federal defense that the Secretary may or may not wish to inject into the case in the Ohio courts in support of her proposed interpretation of state law.

One other thing. A federal court may not enjoin a state official to follow state law, *see Pennhurst*, 465 U.S. at 106, which means that, if the Secretary's position in this case were accepted, it is doubtful that the claimants could *ever* obtain relief. Consider the three possible ways in which the federal court could resolve this case. One is that the federal court might reject the claim because it is inconsistent with state law. Another is that the federal court might reject the claim because, even though it is consistent with state law, the federal Constitution (or a federal law) prohibits the claimants from obtaining relief. The third possibility is that the federal court might agree with the claimants' interpretation of state law, might reject the Secretary's' federal-law defenses and might wish to grant the requested relief: an injunction preventing the Secretary from counting the disputed provisional ballots. But because the United States Constitution prohibits federal courts from enjoining state officials to follow state law, the court could not enter such an order. The only relief the federal courts could give in this instance thus would appear to involve the *denial* of the claimants' request for relief. "Heads I win, tails you lose" is not a traditional way, let alone a fair way, to apply the removal doctrine.

\* \* \*

In the final analysis, this case does not present one of those "limited circumstances" where "a defendant may force a plaintiff into federal court despite the plaintiff's desire to proceed in state court." *Mikulski*, 501 F.3d at 560. By the terms of their complaint, the claimants raise only a state-law claim and disavow any reliance on federal law. Absent a substantial federal issue lurking beneath their claim, "we should take [the claimants] at [their] word." *NicSand*, 507 F.3d at 458.

Both parties, elbows drawn, accuse the other of engaging in forum shopping. But to the extent the lawyers for the parties wish to obtain the best forum for resolving their clients' claims, they are doing only what their professional obligations require. To the extent the parties are doing the same thing, the law expressly allows them to do so. The central premise of the well-pleaded-complaint rule is to *facilitate* forum shopping—to allow claimants to pick the law under which they seek redress, to pick the forum that they would like to resolve their claim and to have the courts (most of the time) respect those choices. *See Holmes Group, Inc. v. Vornado Air Circulation Systems, Inc.*, 535 U.S. 826, 831 (2002); *Caterpillar Inc. v. Williams*, 482 U.S. 386, 392 (1987).

Nor do we see any reason to think that a state-court forum for resolving this question of state law will favor one party over the other. In the 2008 calendar year, by our count, there have been at least six original actions decided by the Ohio Supreme Court involving the Secretary of State and interpretations of state law. Not only were none of these six actions removed to federal court, but the Secretary also has won three of them, lost two, and achieved mixed results in one. *See State ex rel. Stokes v. Brunner*, ___ N.E.2d ___, 2008 WL 4810591 (Ohio Oct. 16, 2008) (per curiam); *State ex rel. Myles v. Brunner*, ___ N.E.2d ___, No. 2008-1842, (Ohio Oct. 2, 2008) (per curiam); *State ex rel. Colvin v. Brunner*, ___ N.E.2d ___, 2008 WL 4443962 (Ohio Sept. 29, 2008) (per curiam); *State ex rel. Lawrence County Republican Party Executive Comm. v. Brunner*, 892 N.E.2d 428 (Ohio 2008) (per curiam); *State ex rel. Summit County Republican Party Executive Comm. v. Brunner*, 890 N.E.2d 888 (Ohio 2008) (per curiam); *State ex rel. Parrott v. Brunner*, 882 N.E.2d 908 (Ohio 2008) (per curiam). In a seventh case, we should point out, the defendant removed the case to federal court, but the district court remanded the case to the Ohio Supreme Court after concluding that the plaintiff's mandamus petition (as here) "d[id] not on its face state a claim arising under federal law," or necessarily "require resolution of substantial, disputed issues of federal law," but simply "ask[ed] the court to compel the Secretary to comply with her duties under state law." *Ohio ex rel. Myhal v. Brunner*, No. 2:08-cv-893, 2008 WL 4647701, *1–2 (S.D. Ohio Oct. 20, 2008).

The resolution of this dispute by the Ohio Supreme Court also does not prohibit the Secretary from asserting any relevant defenses, including the defense, if she wishes, of saying that the failure to count these provisional ballots would violate federal law. And if a federal defense is raised and the Ohio Supreme Court rejects it, the Secretary is free to attempt to seek review in the United States Supreme Court. *See Bush v. Gore,* 531 U.S. 98, 102–03 (2000) (per curiam).

III.

For these reasons, we vacate the district court's opinion and remand the case to the Ohio Supreme Court.